623 So.2d 482 (1993)
Michael DUROCHER, Petitioner,
v.
Harry K. SINGLETARY, etc., et al., Respondents.
No. 81986.
Supreme Court of Florida.
August 12, 1993.
Larry Helm Spalding, Capital Collateral Representative, and Martin J. McClain, Chief Asst. Capital Collateral Representative, Tallahassee, for petitioner.
Robert Butterworth, Atty. Gen., and Richard Martell, Asst. Atty. Gen., Tallahassee, for respondents.
PER CURIAM.
The capital collateral representative (CCR) has filed this petition for writ of habeas corpus in the name of Michael Durocher, a prisoner for whom a death warrant has been signed. Durocher, however, objects to CCR's representing him. We have jurisdiction. Art. V, § 3(b)(9), Fla. Const.
*483 The state charged Durocher with first-degree murder for the killing of his former girlfriend and her two children. Shortly after trial began, Durocher decided to change his plea to guilty. The trial court ordered that he be examined to determine his competency to plead guilty and, after the examination showed Durocher to be competent, allowed the change of plea and adjudicated Durocher guilty. During the penalty phase, Durocher refused to allow his counsel to present any mitigating evidence. The jury recommended death unanimously for each count, and the trial court imposed three death sentences. On appeal this Court affirmed Durocher's convictions and sentences. Durocher v. State, 604 So.2d 810 (Fla. 1992), cert. denied, ___ U.S. ___, 113 S.Ct. 1660, 123 L.Ed.2d 279 (1993).[1]
Governor Chiles signed a death warrant on Durocher on May 23, 1993. On May 25, 1993 this Court received a letter from Durocher that reads in pertinent part as follows:
I am a death row inmate, I have four (4) death sentences, all of which have had a direct appeal and [have] been affirmed.
I have made my wishes known to all parties involved that I wish to drop all of my appeals.
I am now receiving opposition from C.C.R. (Capital Collateral Representative) attorneys who are supposedly there to represent me.
The only defense that these attorneys have is to attack my competency, when it has been proven time and time again that I am, in fact, competent.
These attorneys know this, but choose to waste time and the tax payers money in opposing me.
The decision I have made does not make me insane, I realize all of the options that I have and I have thought about this for quite some time and this is simply the best solution for me.
I respectfully request this court to deny any motion filed on my behalf by any group and/or person.
If I wanted any such motion(s) filed, I would file it/them myself.
(Emphasis in original.) CCR argues that it has a statutory duty to represent Durocher and that, therefore, it has standing to file the instant petition. We disagree.
The legislature created CCR in chapter 85-332, Laws of Florida,[2]
to provide for the representation of any person convicted and sentenced to death in this state who is unable to secure counsel due to indigency, so that collateral legal proceedings to challenge such conviction and sentence may be commenced in a timely manner and so as to assure the people of this state that the judgments of its courts may be regarded with the finality to which they are entitled in the interests of justice.
§ 27.7001, Fla. Stat. (1991). To that end, section 27.702, Florida Statutes (1991), sets out the duty of CCR to represent indigent death row inmates. The rights set out in sections 27.7001 through 27.7008, Florida Statutes (1991), however, are the rights of indigent death row inmates to representation, not the right of CCR to represent those inmates. Spalding v. Dugger, 526 So.2d 71 (Fla. 1988); Troedel v. State, 479 So.2d 736 (Fla. 1985). This right to counsel "was established to alleviate problems in obtaining counsel to represent Florida's death-sentenced prisoners in collateral relief proceedings," Spalding, 526 So.2d at 72, but "did not add anything to the substantive state-law or constitutional rights of such persons." Troedel, 479 So.2d at 737.
Competent defendants have the constitutional right to refuse professional counsel and to represent themselves, or not, if they so choose. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); Hamblen v. State, 527 So.2d 800 (Fla. 1988). If the right to representation can be waived at trial, we see no reason why the statutory right to collateral counsel cannot also be waived. On May 26, 1993 Durocher had the following affidavit placed on file with prison officials:

*484 I, Michael A. Durocher, # 809844, refuse to see any attorney associated with C.C.R.
I have informed C.C.R. that I do not wish to appeal any of my death sentences any further.
C.C.R. is not to seek a stay on my behalf.
C.C.R. is supposed to be here to represent me not to oppose me.
(Emphasis in original.) This Court received the following letter on July 6, 1993:
I, Michael Durocher, # 809844, am the alleged petitioner of a petition for extraordinary relief, etc., that was filed, by C.C.R., in this Court on June 25, 1993.
I did not become aware of said petition till June 30 '93 on which I received a copy of the petition along with a copy of the state's response to said petition.
C.C.R. has never had my approval to do anything on my behalf. In fact, I have informed C.C.R. and members thereof, no less than 20 times that C.C.R. is not to assist on my appeal or to seek a stay if/when I get my warrant signed.
Upon reading said petition, I find nearly all of it to be pure speculation and outright lies.
C.C.R. admits this by stating their difficulty in receiving any medical records... .
I have written to this Court on two separate occasions, first was a notice of abandonment of appeal, second was to inform this Court once again that I did not wish to appeal any further, also to let this Court know that I had informed C.C.R. of my intentions and that C.C.R. was in fact going to oppose me even though I made myself quite clear.
I respectfully request that this Court deny this petition and/or anything else that C.C.R. may choose to file on my behalf.
A presumption of competence attaches from a determination of competency to stand trial. Hamblen v. Dugger, 719 F. Supp. 1051 (M.D.Fla. 1989); see also Whitmore v. Arkansas, 495 U.S. 149, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990); Brewer v. Lewis, 989 F.2d 1021 (9th Cir.1993); Lenhard v. Wolff, 603 F.2d 91 (9th Cir.1979); Evans v. Bennett, 467 F. Supp. 1108 (S.D.Ala. 1979).[3] On appeal we affirmed the trial court's determination of Durocher's competency at trial by affirming his convictions. CCR argues that Durocher is not competent to waive collateral representation, but presents nothing more than speculation to support its argument. Durocher, on the other hand, presents every indication that he is knowingly, intelligently, and voluntarily waiving his right to collateral proceedings through his adamant refusal to allow CCR to represent him.[4] Regardless of our feelings about what we might do in a similar situation, we cannot deny Durocher his right to control his destiny to whatever extent remains. As stated in Lenhard,
Bishop is an individual who, for reasons I can fathom only slightly, has chosen to forego his federal remedies. Assuming his competence, which on this record I must, he should be free to so choose. To deny him that would be to incarcerate his spirit  the one thing that remains free and which the state need not and should not imprison.
603 F.2d at 94 (Sneed, J., concurring).[5] Therefore, because Durocher is apparently *485 competent to do so, we hold that he may waive representation by CCR and that CCR has no duty or right to represent a death row inmate without that inmate's permission.
Having said this, however, we also recognize that the state has an obligation to assure that the waiver of collateral counsel is knowing, intelligent, and voluntary. Accordingly, we direct the trial judge forthwith to conduct a Faretta-type evaluation of Durocher to determine if he understands the consequences of waiving collateral counsel and proceedings. If the judge finds a proper waiver by Durocher, he shall report that finding to this Court and the instant petition will be dismissed. If, however, Durocher does not understand the consequences of his decision, the judge shall report that fact to this Court and CCR will be allowed to proceed on Durocher's behalf. The attorney general's office and CCR may attend the evaluation, but may not participate unless permitted to do so by the judge. If the Faretta-type hearing raises questions in the judge's mind about Durocher's competency, he may order a mental health evaluation and make a competency determination thereafter.
To forestall further argument, we also hold that CCR has no standing as a "next friend" to proceed on Durocher's behalf. Although petitions may be filed by "a friendly person in the interest of the person illegally detained... . mere volunteers who do not appear on behalf of the prisoner or show some right to represent him will not be heard."[6]State ex rel. Deeb v. Fabisinski, 111 Fla. 454, 461, 152 So. 207, 209 (1933). To be a next friend one "must provide an adequate explanation  such as inaccessibility, mental incompetence, or other disability  why the real party in interest cannot appear on his own behalf." Whitmore, 495 U.S. at 163, 110 S.Ct. at 1727. Moreover, a next friend has the burden "to establish the propriety of his status and thereby justify the jurisdiction of the court." Id. 495 U.S. at 164, 110 S.Ct. at 1727; Hamblen v. Dugger, 748 F. Supp. 1497 (M.D.Fla. 1990); see Demosthenes v. Baal, 495 U.S. 731, 110 S.Ct. 2223, 109 L.Ed.2d 762 (1990). CCR has not met this burden. As a "mere volunteer," therefore, it has no standing as a next friend of Durocher. Cf. Whitmore;[7]Baal;[8]Brewer;[9]Lenhard, 603 F.2d 91;[10]Hamblen, 748 F. Supp. 1497;[11]Evans.[12]
Therefore, we direct the trial judge to evaluate Durocher's waiver of collateral counsel and, upon his informing this Court of his evaluation, either the petition will be dismissed or CCR will be allowed to proceed.
It is so ordered.
OVERTON, McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
BARKETT, C.J., specially concurs with an opinion.
NO MOTION FOR REHEARING WILL BE ENTERTAINED BY THE COURT.
BARKETT, Chief Justice, specially concurring.
I agree with the majority opinion, but write separately to emphasize that the role of the State in imposing the death sentence transcends the desires of a particular inmate to commit state-assisted suicide. Safeguards to ensure that due process is followed, such as the Faretta-type inquiry of Durocher, are essential in cases of this nature.
When a death sentence is imposed under our Constitution and statutes, the state has dual interests. On one hand, the State has the responsibility to see that the presumptively *486 legal sentence is properly carried out. On the other hand, the State has a responsibility to ensure that society's ultimate penalty is not imposed except in appropriate cases and that the sentence is not arbitrary or the result of a mistake. See generally Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); Hamblen v. State, 527 So.2d 800, 808 (Fla. 1988) (Barkett, J., dissenting). This second responsibility does not end when an inmate's appeals are completed; it continues until the moment that the death sentence is imposed.
Thus, when an inmate sentenced to death expresses the desire to waive legal representation in collateral proceedings, the State has an obligation to assure that the waiver is knowing, intelligent, and voluntary. See Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); see also Anderson v. State, 574 So.2d 87, 95 (Fla. 1991) (Barkett, J., concurring in part, dissenting in part), cert. denied, ___ U.S. ___, 112 S.Ct. 114, 116 L.Ed.2d 83 (1991). The evaluation of Durocher outlined in the majority opinion is appropriate in unusual cases of this type to provide the "unique safeguards" required by the Eighth Amendment. See Spaziano v. Florida, 468 U.S. 447, 468, 104 S.Ct. 3154, 3166, 82 L.Ed.2d 340 (1984) (Stevens, J., concurring in part, dissenting in part) ("[B]ecause of its severity and irrevocability, the death penalty is qualitatively different from any other punishment, and hence must be accompanied by unique safeguards... .").
In most cases, I believe such an inquiry would suffice. Durocher's case, however, presents an additional problem because he waived the presentation of mitigating evidence at his trial. The appropriateness of the death sentence in his case has never been subjected to true adversarial testing. While I recognize that this issue has been decided, I believe public counsel should have been appointed in Durocher's trial to present mitigating evidence. Hamblen, 527 So.2d at 806; see also Hamblen v. Dugger, 546 So.2d 1039, 1042 (Fla. 1989) (Barkett, J., dissenting).
NOTES
[1] More facts are included in this opinion and in Durocher v. State, 596 So.2d 997 (Fla. 1992).
[2] Codified as sections 27.7001 through 27.708, Florida Statutes (1991).
[3] Although the instant case is one of first impression for this Court, all of the cases in this citation have held that postconviction proceedings can be waived. See also Demosthenes v. Baal, 495 U.S. 731, 110 S.Ct. 2223, 109 L.Ed.2d 762 (1990); Gilmore v. Utah, 429 U.S. 1012, 97 S.Ct. 436, 50 L.Ed.2d 632 (1976).
[4] Apparently, even Durocher's mother is reconciled to her son's decision not to proceed. Teresa Stepinski, Mother Accepts Condemned Son's Death Wish, The Florida Times-Union, June 1, 1993, at A-1.
[5] Chief Justice Rehnquist echoed this sentiment in stating that

however worthy and high minded the motives of "next friends" may be, they inevitably run the risk of making the actual defendant a pawn to be manipulated on a chessboard larger than his own case. The idea that the deliberate decision of one under sentence of death to abandon possible additional legal avenues of attack on that sentence cannot be a rational decision, regardless of its motive, suggests that the preservation of one's own life at whatever cost is the summum bonum, a proposition with respect to which the greatest philosophers and theologians have not agreed and with respect to which the United States Constitution by its terms does not speak.
Lenhard v. Wolff, 443 U.S. 1306, 1312-13, 100 S.Ct. 3, 6-7, 61 L.Ed.2d 885 (1979).
[6] A similar rule is in effect in the federal courts: "It was not intended that the writ of habeas corpus should be availed of, as a matter of course, by intruders or uninvited meddlers, styling themselves next friends." Wilson v. Dixon, 256 F.2d 536, 538 (9th Cir.1958).
[7] Denying next friend standing to a fellow inmate.
[8] Denying next friend standing to Baal's parents.
[9] Denying next friend standing to Brewer's mother.
[10] Denying next friend standing to volunteer attorneys.
[11] Denying next friend standing to CCR.
[12] Denying next friend standing to Evans' mother.