702 So.2d 224 (1997)
Rigoberto SANCHEZ-VELASCO, Appellant,
v.
STATE of Florida, Appellee.
No. 89511.
Supreme Court of Florida.
December 4, 1997.
*225 John R. Hamilton of Foley & Lardner, Orlando, and Michael A. Bowen of Foley & Lardner, Milwaukee, WI, for Appellant.
Robert A. Butterworth, Attorney General and Randall Sutton, Assistant Attorney General, Miami, for Appellee.
PER CURIAM.
Michael Bowen, special appointed postconviction counsel for Rigoberto Sanchez-Velasco, files this appeal of the trial court's order discharging Bowen and dismissing Sanchez-Velasco's Florida Rule of Criminal Procedure 3.850 challenge. We have jurisdiction. Art. V, § 3(b)(1), (7), Fla. Const. For the reasons expressed, we affirm the order of the trial court. In so holding, we do not mean to imply any improper conduct or ineffective assistance by Bowen as pro bono counsel in this matter. It is clear he has proceeded in an ethical and professional manner in his representation of Sanchez-Velasco.
A thorough discussion of the underlying facts of this case is contained in Sanchez-Velasco v. State, 570 So.2d 908 (Fla.1990), cert. denied, 500 U.S. 929, 111 S.Ct. 2045, 114 L.Ed.2d 129 (1991). In summary, Sanchez-Velasco resided with Marta Molina in Hialeah. On December 12, 1986, Molina left her eleven-year-old daughter in the care of Sanchez-Velasco. Molina returned home from work that evening to find that her daughter had been murdered. Sanchez-Velasco was not at the apartment. The victim's face was swollen, and she was naked and bleeding from her vagina. A medical examination concluded that the victim was raped and that strangulation was the cause of her death. Missing from Molina's apartment were the victim's gold chains, her identification bracelet, and Molina's fur coat. Sanchez-Velasco was located by the police and questioned about the murder. Following proper Miranda[1] warnings, Sanchez-Velasco confessed to robbery, rape, and murder. Sanchez-Velasco also remarked that he would prefer to be executed immediately rather than "rot in jail." The jury found Sanchez-Velasco guilty of first-degree murder, sexual battery of a victim under twelve years of age, and theft as a lesser included offense of grand theft. Upon the conclusion of the penalty phase, the jury recommended the death penalty by a vote of eight to four, and the judge imposed a sentence of death for the first-degree murder conviction.
In his sentencing order, the trial judge found the following two aggravating circumstances: (1) the capital felony was especially heinous, atrocious, or cruel, and (2) the capital felony was committed while the defendant was engaged in the commission of a sexual battery. The judge found no statutory or nonstatutory mitigating circumstances. The judge explained in his order why he did not find Sanchez-Velasco's mental condition to be a mitigating circumstance. Following his trial, this Court affirmed the convictions and death sentence and the United States Supreme Court denied certiorari review.
Sanchez-Velasco's competency to stand trial and waive certain rights was evaluated numerous times during the proceedings below. A pretrial mental health examination demonstrated that Sanchez-Velasco was competent at the time of the crime and competent to stand trial. A competency evaluation ordered by the trial judge during the trial again demonstrated that Sanchez-Velasco was competent to stand trial. During the penalty phase, a defense psychiatrist testified that Sanchez-Velasco suffered from an emotional disturbance, but was legally sane. Prior to sentencing, a second defense psychiatrist testified that Sanchez-Velasco possibly suffered from a neuropsychological dysfunction, but was legally competent at the time of the examination. By the conclusion of the *226 trial, Sanchez-Velasco had been examined by no less than eight mental health experts, all of whom found him to be competent to proceed.
After his convictions and sentences were affirmed, Sanchez-Velasco filed a rule 3.850 motion for post-conviction relief, challenging his convictions and sentences on sixteen grounds. Sanchez-Velasco also underwent additional competency evaluations. In support of the rule 3.850 motion, the defense retained Dr. Jorge Herrera and Dr. Alec Whyte to evaluate Sanchez-Velasco. Drs. Herrera and Whyte determined that Sanchez-Velasco suffered from significant psychological disorders. The defense planned to present the doctors' testimony at the rule 3.850 hearing to rebut the previous competency determinations. During this same time period, Sanchez-Velasco underwent a competency evaluation by Dr. Richard Greer in connection with a separate murder trial in Broward County. Dr. Greer found Sanchez-Velasco competent in that case to represent himself and enter a guilty plea.
On August 29, 1996, a hearing was held before a new trial judge on Sanchez-Velasco's rule 3.850 motion and the judge ordered an evidentiary hearing on two of the claims raised in the motion. On October 24, 1996, Sanchez-Velasco moved to discharge his post-conviction counsel, Michael Bowen. Sanchez-Velasco claimed that Bowen could not effectively represent him because Bowen had only minimal contact with him, was not familiar with Florida law, and primarily practiced civil law. Sanchez-Velasco referred to Bowen as his "enemy," and asked the judge to force Bowen to stay at a distance from him "before a misfortune could take place." Sanchez-Velasco also sought to have his rule 3.850 motion withdrawn and his execution expedited. This was not the first time Sanchez-Velasco had sought to end his postconviction appeals. On March 31, 1994, and again on April 28, 1994, Sanchez-Velasco wrote to Governor Lawton Chiles, requesting that no further appeals be undertaken on his behalf. On June 20, 1995, Sanchez-Velasco wrote to the Governor a third time seeking to have his post-conviction appeals waived and his death warrant signed. Sanchez-Velasco's own attorneys endeavored to ensure that none of the requests were honored.[2]
Immediately following Sanchez-Velasco's motion, the trial judge questioned Bowen and determined that he was not ineffective in his representation. The judge then told Sanchez-Velasco that she would not appoint another attorney to represent him, and that he could either represent himself or continue with Bowen as his attorney. Sanchez-Velasco responded, "The reason I'm here right now is because I don't need an attorney. I don't want him, nor do I want any other attorney, nor have I asked the Court for another attorney." The judge stated, "He appears very intelligent to me," but ordered an emergency competency evaluation before she ruled on whether Sanchez-Velasco could represent himself and waive his appeals. The next day, Dr. Sonia Ruiz personally interviewed and evaluated Sanchez-Velasco. She then issued a four-page, single-spaced report to the judge. Dr. Ruiz did not personally testify as to her conclusions. Her conclusions are summarized in the report as follows:
It is this evaluator's opinion that this defendant is fully competent to proceed. He has a factual and rational understanding of the proceedings. He has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding. He appreciates the possible consequences of his decisions. He has the ability to manifest appropriate courtroom behavior. He has the capacity to testify relevantly in his behalf. There is no major mental illness noted. No overt thought disorder was present at the time of this examination. The defendant does not appear to suffer from a major mood disorder, such as major depression. He has no cognitive deficits. There are no apparent neurological deficits. His thoughts are clear and related in a coherent *227 fashion. He did not express any suicidal or homicidal ideations. His affect and mood were deemed to be appropriate. No major mental illness or defect is deemed to be present that could interfere with his capacity to reasonably assist counsel or himself in his defense. No psychiatric interventions are deemed to be necessary at this time.
On October 25, 1996, the trial judge questioned Sanchez-Velasco to determine if he understood the consequences of waiving his post-conviction counsel and proceedings. The judge explored Sanchez-Velasco's age, education and employment history. The judge asked if Sanchez-Velasco understood that if he prevailed on the rule 3.850 motion he would be entitled to a new sentencing hearing. Sanchez-Velasco replied that he understood. The judge explained that by withdrawing the rule 3.850 motion his right to any further appeals would be forever lost, and again recommended that he represent himself or allow Bowen to represent him. Sanchez-Velasco stated that he understood the judge would not appoint another attorney for him, and that he did not want Bowen to serve as his attorney. Sanchez-Velasco then told the judge, "It's my right to represent myself and to withdraw my 3.850 motion. And I hope that you grant it. It's my own will, and I'm competent to make my own decisions, and that I'm thankful for your consent, but it's my decision."
On the basis of Dr. Ruiz's evaluation, the 1995 evaluation by Dr. Greer, and the colloquy, the trial judge found Sanchez-Velasco competent to dismiss his counsel and withdraw his rule 3.850 motion. The judge's order concluded as follows:
The Court finds that the Defendant is well-aware and fully understands the consequences of his actions. The Court further finds that the Defendant has sufficient mental capacity, education and life experience to appreciate the nature of the proceedings and the consequences of withdrawing the Rule 3.850 and in representing himself.
The Court finds the Defendant has freely, voluntarily, knowingly and intelligently waived his right to counsel for his collateral appeal. The Court further finds the Defendant, representing himself, has intelligently and knowingly moved to withdraw his Motion for Post-Conviction Relief and that the Defendant has the "right to control his own destiny to whatever extent remains." Durocher v. Singletary, 623 So.2d 482 (Fla.1993) at 484.
Bowen, Sanchez-Velasco's former counsel, now appeals the trial judge's order. Bowen claims that Dr. Ruiz's competency evaluation, upon which the trial judge's order was based in part, was facially deficient and Sanchez-Velasco was actually incompetent to represent himself and withdraw his rule 3.850 motion. Bowen asserts that Sanchez-Velasco's competency was placed in legitimate doubt at the hearing of October 24, 1996, when he simultaneously demanded to (1) dismiss Bowen due to ineffectiveness in pressing his post-conviction appeal and to (2) withdraw his post-conviction appeal. Bowen contends that Sanchez-Velasco's incompetence is demonstrated by the fact that his two demands are in diametric contradiction. Bowen claims it was this contradiction that likely prompted the trial judge to order Sanchez-Velasco's competency evaluation. Bowen asserts that the report submitted by Dr. Ruiz was insufficient because it failed to discuss or analyze this evidence of Sanchez-Velasco's incompetency. Bowen concludes that the order of the trial court cannot be sustained because it is based in part on the deficient competency report. We disagree that Dr. Ruiz's report was deficient and find no reasonable basis for any doubt concerning Sanchez-Velasco's competency to dismiss his attorney and withdraw his post-conviction motion.
A waiver of collateral counsel and proceedings must be knowing, intelligent, and voluntary. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); Durocher v. Singletary, 623 So.2d 482, 485 (Fla.1993). In Durocher, in a similar situation, we said:
Competent defendants have the constitutional right to refuse professional counsel and to represent themselves, or not, if they so choose. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); Hamblen v. State, 527 So.2d 800 (Fla. 1988). If the right to representation can be waived at trial, we see no reason why *228 the statutory right to collateral counsel cannot also be waived.
623 So.2d at 483. Under Durocher, when a defendant expresses a desire to dismiss his or her collateral counsel and proceedings, the trial judge must conduct a Faretta-type[3] evaluation to determine that the defendant understands the consequences of his or her request. Id. at 485. If the Faretta-type evaluation raises a doubt in the judge's mind as to the defendant's competency, the judge may order a mental health evaluation and determine competency thereafter. Id. If the Faretta-type evaluation raises no doubt in the judge's mind as to the defendant's competency, no mental health evaluation is necessary for the competency determination. Id.
The trial judge fully followed the procedure outlined in Durocher in determining Sanchez-Velasco's competency to proceed. Following Sanchez-Velasco's motion, the judge thoroughly explored his education and experience, and repeatedly stressed the implications of dismissing his collateral appeal. The judge determined that Sanchez-Velasco appeared to be "very intelligent" and "very competent." The record discloses that the judge then ordered the competency evaluation, not because she had a reasonable doubt as to Sanchez-Velasco's competency, but in an abundance of caution because Sanchez-Velasco was requesting to be put to death. The evaluation conducted by Dr. Ruiz was comprehensive and responsive to the needs of the trial court. Dr. Ruiz inquired about Sanchez-Velasco's childhood, education, employment history, religious beliefs, criminal history, relationship with his attorney, and decision to expedite his execution. Dr. Ruiz concluded in the report:
Overall, this defendant presents as an individual who is fully competent to proceed with legal matters. There is no major mental disorder noted. There is no thought disorder, nor any major mood disorder evidenced at this time. He is able to reason properly, without any mental illness or defect interfering with his capacity to assist counsel or himself in his defense.
Upon receiving the report, the judge stated that Dr. Ruiz's findings and conclusions supported her own belief that Sanchez-Velasco was competent to make his own legal decisions. Dr. Ruiz's evaluation was consistent with nine other competency determinations. The judge's determination of competency was also supported by the fact that Sanchez-Velasco arrived at the hearing with a presumption of competence attributable to the previous determinations of his competency. See Whitmore v. Arkansas, 495 U.S. 149, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990); Hunter v. State, 660 So.2d 244 (Fla.1995); Durocher, 623 So.2d at 484. The judge then discharged Bowen as Sanchez-Velasco's counsel and dismissed the rule 3.850 motion.
Bowen argues that Dr. Ruiz's report failed to expressly address the alleged contradictions between Sanchez-Velasco's claim that his counsel was ineffective in pressing his appeal and his request to withdraw his appeal. We find that, to the extent such a contradiction may exist, it does not in and of itself lead us to doubt Sanchez-Velasco's competence in the face of at least ten evaluations determining him to be competent. Our decision in Durocher requires a mental health evaluation only when the Faretta-type evaluation leaves the judge with doubts as to the defendant's competency. Here, the record discloses that the judge had no such doubts but merely ordered the evaluation in an abundance of caution. In effect, she was making certain her conclusions were correct as well as consistent with prior competency determinations.
Our decision in Durocher controls the issues in this appeal. Accordingly, we affirm the order of the trial court discharging Sanchez-Velasco's post-conviction counsel and dismissing his rule 3.850 motion.
It is so ordered.
KOGAN, C.J., OVERTON, SHAW, HARDING and WELLS, JJ., and GRIMES, Senior Justice, concur.
ANSTEAD, J., recused.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] Sanchez-Velasco was initially represented by Bowen and two attorneys from the Volunteer Lawyer's Resource Center (VLRC). The VLRC attorneys withdrew from the case prior to the hearing on Sanchez-Velasco's motion to discharge Bowen and withdraw his post-conviction appeal.
[3] Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).