PARIENTE, J.,
dissenting.
I dissent because the procedural posture of the case and the issues raised in the pending appeal about Trease’s possible innocence trump our interests in finality. *127 By not allowing Trease to proceed with his appeal of the denial of postconviction relief, we run the risk of Trease being executed without this Court having had the opportunity to review his postconviction claims of innocence.[7]
While Trease has changed his mind regarding whether to proceed with his post-conviction proceedings (which his counsel attributes to organic brain damage and trauma), Trease has also consistently maintained his innocence. The appeal from the denial of his postconviction motion, which is still pending before this Court, raises significant issues touching upon his guilt. These issues include questions on the now-discredited compositional bullet lead analysis,[8] which was used by the testifying FBI expert to match bullet fragments found at the crime scene to a bullet removed from a pistol in Trease’s possession. The State used this now-debunked science to corroborate testimony of Trease’s codefendant, who testified that she witnessed Trease murder the victim. Because thei’e was no physical evidence tying Trease to the crime, her “testimony was critical at trial.” Trease, 768 So.2d at 1050. Trease also claims that newly discovered evidence establishes that she admitted to murdering the victim.
The question is whether these claims of innocence raised in Trease’s first post-conviction motion should outweigh this Court’s interests in the finality of the waiver and legitimate concerns about a defendant who continually changes his mind. In James v. State, 974 So.2d 365, 368 (Fla.2008), a decision in which I concurred, we were concerned that “a mere change of mind” not in itself constitute a sufficient basis for setting aside a previous waiver. We emphasized that the procedures set forth in Dttrocher[9] regarding the ability of a death-sentenced defendant to waive further attacks on his conviction and penalty were mandated so that the defendant would “fully understand the consequences and finality attached to a waiver” while also “respecting his wishes to determine his fate.” Id.
However, I consider James to be distinguishable from this case in two ways. First, in James, the defendant’s change of mind requesting reinstatement of counsel and resumption of postconviction proceedings occurred over two years after he voluntarily dismissed his postconviction proceedings. Id. at 366. In this case, Trease’s request to resume the appeal of his post-conviction proceedings occurred while the appeal of his dismissal of counsel and waiver of postconviction proceedings were still pending in this Court. Second, in James, we were reviewing solely the trial court’s decision to deny reappointment of counsel and reinstatement of postconviction proceedings. Here, Trease actually proceeded with his initial postconviction motion while represented by counsel, and the trial court denied relief. That order of denial is on appeal in this Court, and an initial brief on the merits has been filed.
*128 We have recognized that “death is different.” See, e.g., State v. Davis, 872 So.2d 250, 254-55 (Fla.2004). The chance that there may be issues regarding Trease’s guilt and a possible claim of innocence should weigh in favor of our allowing this appeal to proceed to conclusion on the merits. We should err on the side of caution to avoid the chance of Trease being executed with outstanding unresolved questions about his guilt and possible innocence.
For the above reasons, I would allow the appeal to proceed on the merits.

. These issues were raised in his postconviction proceedings as claims of ineffective assistance of counsel, newly discovered evidence, and violations of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

. In 2005, after Trease’s conviction, the FBI discontinued the use of bullet lead analysis after it concluded that there was an "inability of scientists and manufacturers to definitively evaluate the significance of an association between bullets made in the course of a bullet lead examination.” Press Release, Fed. Bureau of Investigation, FBI Laboratory to Increase Outreach in Bullet Lead Cases (Nov. 17, 2007), available at http://www.fbi.gov/ pressrel/pressrel07/bulletleadl 11707.htm.

.Durocher v. Singletary, 623 So.2d 482 (Fla. 1993).