# Supreme Court of Florida

_____

No. SC18-7
_____

**WILLIAM ROGER DAVIS, III,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

October 25, 2018

PER CURIAM.

Pursuant to Florida Rule of Criminal Procedure 3.851, counsel for William

Roger Davis, III, a prisoner under sentence of death, appeals the postconviction

court's order dismissing the postconviction proceedings below but not discharging

counsel.[1]  For the reasons explained below, we affirm the postconviction court's

order.

## BACKGROUND

A jury convicted Davis of first-degree murder, kidnapping, and sexual

battery.  *Davis v. State*, 148 So. 3d 1261, 1264 (Fla. 2014).  This Court's opinion

_____

1.  We have jurisdiction.  Art. V, § 3(b)(1), Fla. Const.

on direct appeal explained the facts of the underlying crimes, which were committed in October 2009. *Id.* at 1265-66. Davis did not dispute that he committed the crimes but "contended at trial that he was insane at the time of these offenses." *Id.* at 1266.

After a penalty phase, where Davis "testified on his own behalf," *id.* at 1268, the jury recommended a sentence of death by a vote of seven to five. *Id.* at 1269. Following the jury's recommendation, the trial court—finding six aggravating factors, no statutory mitigation, and six nonstatutory mitigating circumstances— imposed a sentence of death. *Id.* at 1269-70.[2]

---

2. The trial court found the following aggravating factors, assigning each great weight:

> (1) Davis was on felony probation when the murder was committed; (2) Davis was previously convicted of a felony involving the use or threat of violence to another person; (3) the murder was especially heinous, atrocious, or cruel (HAC); (4) the murder was committed in the course of committing sexual battery or kidnapping; (5) the murder was committed to avoid arrest; and (6) the murder was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification (CCP).

*Davis*, 148 So. 3d at 1269-70. As to statutory mitigation, the trial court "specifically reject[ed] the statutory mitigating circumstance that Davis committed the murder while under the influence of an extreme mental or emotional disturbance." *Id.* at 1270. As to nonstatutory mitigation, the trial court found the following six nonstatutory mitigating circumstances and assigned each the noted weight:

> (1) Davis suffers from long-term chronic mental health problems (some weight); (2) Davis can be properly treated with medication (some weight); (3) Davis is able to currently adapt to imprisonment

On direct appeal, Davis challenged only his sentence of death. *See generally id.* Upon review, this Court affirmed Davis's convictions and sentence of death. *Id.* at 1283. His sentence of death became final in January 2015.

In December 2015, Davis filed a "Motion to Vacate Judgments of Conviction and Sentence of Death Pursuant to Florida Rule of Criminal Procedure 3.851," referred to herein as "Davis's Postconviction Motion."[3] At a status

---

(little weight); (4) Davis is able to hold employment (some weight);
(5) Davis showed remorse for the murder (some weight); and (6)
Davis showed appropriate courtroom demeanor (substantial weight).

*Id.*

3. After several amendments, Davis's Postconviction Motion claimed that trial counsel was ineffective for the following reasons: (1) failing to move the court to redact the irrelevant and highly prejudicial portions of Investigator Hemmert's first interview of Davis after the crime; (2) failing to move for a mistrial due to prosecutorial misconduct during Dr. Golden's testimony; (3) regarding Davis's prior insanity plea in the Tenth Judicial Circuit; (4) stipulating to the introduction of the certified judgments and sentences setting forth Davis's prior convictions during the guilt phase; (5) failing to limit evidence of a prior act for which Davis was never convicted; (6) failing to impeach a witness for whom the State knowingly failed to correct false testimony that was material in violation of *Giglio v. United States*, 405 U.S. 150 (1972); (7) failing to object to improper victim-impact evidence regarding the victim's brother; and (8) failing to object to prosecutorial misconduct when the State insinuated a motive for Davis's conduct after the crime and for failing to ask the court to take judicial notice of the time the sun set on the day of the crime. The motion further raised the following claims: (9) "the cumulative effect of the constitutional errors alleged under claims 1 through 8 deprived . . . Davis of his Sixth Amendment right to a fair trial with the effective assistance of counsel"; (10) the Eighth Amendment of the United States Constitution prohibits the execution of a mentally ill person; (11) Davis "may be incompetent at the time of execution, in which case his Eighth Amendment right to be free from cruel and unusual punishments will be violated"; (12) Davis's

- 3 -

conference on January 9, 2017, defense counsel advised the postconviction court that he had received a letter from Davis indicating that Davis "wished to waive all of his penalty phase claims," including his claim to *Hurst*[4] relief.  As a result, the postconviction court appointed two experts to evaluate Davis's competency.

While waiting for the experts to complete their reports, Davis, through counsel, filed a letter to the postconviction court.  Davis's handwritten letter stated in full:

> My name is William Roger Davis III . . . .
> As you are no doubt aware, I have expressed my desire to waive my penalty phase claims in my pending Rule 3.851 motion.
> One of the main reasons for this is that I am where I asked to be [and] believe I am where I should be.  I have said that before; it's nothing new.
> After a lot of reflection [and] conversations with family, I have decided that I would like to withdraw my *entire* pending Rule 3.851 motion.  Yes, the *entire* motion.
> The reasons are very simple.  If I were to be given a new trial— a big if—it would then subject the [victim's] family to the whole thing all over again.  I am not willing to do that.  Nor am I willing to subject my family to that.  Add to that the possibility of a life sentence that I don't want, and the choice is a clear one.
> Thank you for everyone's time [and] I apologize for any inconvenience this may, or may have, caused.

---

sentence of death is unconstitutional under *Hurst v. Florida*, 136 S. Ct. 616 (2016), and *Hurst v. State* (*Hurst*), 202 So. 3d 40 (Fla. 2016), *cert. denied*, 137 S. Ct. 2161 (2017); and (13) Davis's sentence of death is unconstitutional under the Eighth Amendment.  The postconviction court granted an evidentiary hearing on claims 1-7.  Davis waived his right to be present at the evidentiary hearing.

4. *Hurst v. State* (*Hurst*), 202 So. 3d 40 (Fla. 2016), *cert. denied*, 137 S. Ct. 2161 (2017); *see Hurst v. Florida*, 136 S. Ct. 616 (2016).

Later, both experts submitted their reports, each finding that Davis was competent to proceed with waiving his pending rule 3.851 motion. No objections were made regarding the experts' findings. Thus, the postconviction court set a hearing to review whether Davis's waiver was valid. *See* Fla. R. Crim. P. 3.851(i)(6).[5]

At the hearing, the following discussion took place regarding Davis's intent to dismiss his pending motion:

> THE COURT: So it's my responsibility to determine that you are knowingly, voluntarily, and freely waiving your right to postconviction relief, you've been represented by Collateral Counsel in this matter during the entire course of this process. I've been apprised of the fact that you no longer want to proceed with your postconviction relief matters, and so I have to ask you: Is it your decision to waive your pending postconviction motions and discharge your counsel?
>
> MR. DAVIS: *I do want to discharge my motion, however, it's my understanding that through the 3.851 motion rule pertaining to this particular case that I'm supposed to waive my counsel. My counsel as well as CCR Middle are currently . . .*
>
> . . . .
>
> MS. AHMED: We've talked to Mr. Davis about this for a while. His position is to waive his postconviction motions and the amended postconviction motion first. However, we'd ask the Court, and we spoke to Mr. Davis about keeping us as counsel, after the Court makes a determination about Mr. Davis' motion for purposes of, you know, competency down the road, any potential issues or federal issues that may come up. *So certainly we would certainly ask*

---

5. Present at the hearing were counsel for the State—Anna Valentini (Assistant State Attorney), Tayo Popoola (Assistant Attorney General)—counsel for Davis—Raheela Ahmed (CCRC Middle), Lisa Bort (CCRC Middle), Maria Perinetti (CCRC Middle)—and Davis.

*the Court to allow us to stay on as counsel; we think it would be*
*appropriate in the long [term].*

THE COURT: And I have no problem with that.

MR. DAVIS: Okay.

THE COURT*: So if you want me to continue your counsel in*
*this case, I'm happy to do that for any issues that may arise in the*
*future.* But I have to tell you of a lot of things that will be like a
domino effect and occur once you take these steps should you decide
to do it. So that's why it's very important to go through each one of
these questions.

MR. DAVIS: Okay.

THE COURT: So as far as your postconviction relief motions
and the waiver of all of the ones that have been filed and are pending
at this time; are you firm and fixed in that decision?

MR. DAVIS: Yes, sir.

THE COURT: Okay. Do you need any more time to talk to
your lawyers prior to making this decision a finality?

MR. DAVIS: No, sir.

. . . .

THE COURT: [D]o you understand that by waiving your right
to a postconviction motion or a hearing on those motions, you are
forever waiving your right to evidentiary hearing and to present
eviden[ce] on your [behalf] at such a hearing?

MR. DAVIS: Yes, sir.

THE COURT: Do you understand the possible outcomes after
an evidentiary hearing are that the Court may find you're entitled to a
new guilt phase trial or a new penalty phase proceeding or no relief at
all?

MR. DAVIS: Yes, sir.

THE COURT: Do you understand by waiving your
postconviction motion at this stage you are waiving a right to have
this Court make a determination on the merits of your motion?

MR. DAVIS: Yes, sir.

(Emphasis added.)

As to Davis's *Hurst* claim, which was raised in Davis's Postconviction

Motion, the postconviction court explained that, on the merits, Davis would likely

be entitled to a new penalty phase, at which the jury would be required to unanimously make all of the findings necessary to impose a sentence of death. *See Mosley v. State*, 209 So. 3d 1248, 1253 (Fla. 2016); *Hurst*, 202 So. 3d at 44. The postconviction court made clear to Davis that waiving this claim would be "for all time." Davis confirmed that he understood the permanent nature of the waiver and his intent to proceed with the waiver.

As to other possible claims and Davis's attorneys, the following discussion took place:

> THE COURT: Do you understand that it is permanent and that you cannot wake up tomorrow morning or the next year or ten minutes after I make a decision or five years from now or at any point in time in the future and say that you've changed your mind?
> MR. DAVIS: Yes, sir.
> THE COURT: Do you understand that if the Court grants your request to discharge you—I'm sorry. *I won't discharge your lawyers, but to dismiss your pending motions that you would be found warrant eligible*, which means the governor of the State of Florida could sign a warrant for your execution?
> MR. DAVIS: Yes, sir.
> THE COURT: Do you understand that you are also permanently losing your right to take advantage of any changes that may occur in the law that could retroactively be applied to your case and benefit you?
> . . . I'm not saying you don't have the right to challenge the legality of the way the sentence is carried out. *So if there's challenges that come about to the Supreme Court with regard to the medications that are used for that purpose or the method by which they perform the execution . . . those issues . . . will stay with you to be able to challenge those parts of the process.*
> . . . .
> It's just the question of whether or not you can go forward and challenge your sentence of death and your postconviction ability to

get . . . postconviction relief at this time and have that hearing, you're giving that up. *You're giving up the right to challenge the guilt phase findings, the penalty phase findings, and the sentence of death. It's most likely that when the governor gets to it, he'll issue the warrant.* Whatever comes after that as far as warrant relief issues . . . that relate to how the execution would be carried out is really always preserved constitutionally for you. . . . I would never allow you to waive that.

(Emphasis added.) Consistent with his handwritten letter, Davis confirmed that he understood the court's statements and intended to waive claims challenging "the guilt phase findings, the penalty phase findings, and the [imposition of a] sentence of death."

At several points during the hearing, Davis's counsel further explained the rights that Davis did not intend to waive:

> MS. PERINETTI: Thank you, Your Honor, and that's why I wanted to address that. And that's partly why we want to remain as counsel, because just because he doesn't wish to have a new guilt phase or a new penalty phase and that he's accepting his sentence doesn't mean that he is consenting to the right to be tortured to death or anything like that.
> THE COURT: Right.
> . . . .
> MS. AHMED: [I]f I understand Mr. Davis' question, he wants to know what happens if, as in a *Hurst* situation or as in Freddy Lee Hall's case—or . . . as in *Atkins*[6] where they decide you cannot, you know execute mentally retarded or intellectually disabled people, and then *Hurst* where we found the—so the question becomes, and I explained to Mr. Davis, that when the law changes, we're going to have to see if it is retroactive to his case. If it is, certainly we will be counsel, we can make the appropriate pleadings and motions. If it is not, we can still fight and litigate should we believe it should be retroactive to him. But I did make clear—

---

6. *Atkins v. Virginia*, 536 U.S. 304 (2002).

THE COURT: As it pertains to Mr. Davis at the time that issue comes up as oppose[d] to what he is today, which is competent to proceed is what—

MS. PERINETTI: Right.

THE COURT: So I'm not hearing any objection that anyone's disagreeing that he's competent to proceed with these decisions today, what we're talking about. So I understand you and Mr. Davis understands, *what I'm hearing is that should at some point in time Mr. Davis be found to be—suffer from a severe enough mental illness that under the then present law that an execution cannot be performed, and that's the type of issue that he wants to be able to preserve.*

MR. DAVIS: Yes, sir. . . .

THE COURT: *And the methodology of how they carry out the execution as well, humaneness and those kinds of issues.*

MR. DAVIS: Sure.

THE COURT: *Of course those are always things that are challengeable for the Court as far as I'm concerned to the Court,* but any other issues and what I meant by motions, writs, petitions, those things, the United States Supreme Court and court of appeals under the federal court system is all pertaining to the sentence of death and the postconviction relief. And the issues with . . . regard to the guilt phase, penalty phase or sentence of death; just how they carry it out and who you are at that time or whether or not they can lawfully execute a person in your condition at that point.

MR. DAVIS: Yes, sir.

(Emphasis added.) After this explanation, the postconviction court again confirmed Davis's intent to proceed with dismissing the pending proceedings.[7]

Thus, as indicated above, Davis made clear that he intended to retain counsel in order to bring future claims, namely those related to his execution—claims

7. The postconviction court also confirmed that Davis was not under the influence of any medicines, drugs, or alcohol that affected his ability to enter the waiver and was not threatened, influenced, or bribed to enter the waiver. *See Faretta v. California*, 422 U.S. 806 (1975); *McGirth v. State*, 209 So. 3d 1146, 1156-57 (Fla. 2017).

challenging the method of execution or claims regarding whether he could constitutionally be executed. *Cf. Atkins*, 536 U.S. at 321.

After the hearing, the postconviction court entered an "Order Dismissing Defendant's Motion to Vacate Judgments of Conviction and Sentence of Death Pursuant to Florida Rule of Criminal Procedure 3.851 and Second Amended Motion," referred to herein as "Postconviction Court's Order," stating in pertinent part:

> After conducting an inquiry of the Defendant, the Court finds that the Defendant, William Roger Davis, III, has made the decision to dismiss his pending Rule 3.851 motion and terminate postconviction proceedings. He has done so fully aware of the legal consequences of that decision, including the legal consequences of abandoning his *Hurst* claims even though he would be entitled to *Hurst* relief. The Court also finds that [Davis's] decision to waive his pending Rule 3.851 motions was made knowingly, freely, and voluntarily. The Court notes that the Florida Supreme Court has not addressed whether a defendant can waive a *Hurst* claim, especially when the defendant would clearly be entitled to *Hurst* relief. However, in light of [Davis's] clear desire to dismiss his pending motions and terminate further postconviction proceedings, the Court finds that it [is] appropriate to grant [Davis's] request and to dismiss his *pending* motions.

Postconviction Ct.'s Order at 2-3 (emphasis added); *see* Fla. R. Crim. P. 3.851(i). Notably, the Postconviction Court's Order did not discharge Davis's counsel. The postconviction court allowed Davis to retain counsel to bring future, execution-related claims, such as "that an execution cannot be performed" or challenges to the "methodology of how they carry out the execution," as the court explained at

- 10 -

the hearing.  *See* Postconviction Ct.'s Order at 2.  As required by rule 3.851(i)(8), Davis's counsel filed this appeal.

## ANALYSIS

For the following reasons, we affirm the Postconviction Court's Order.  This Court explained the basis for postconviction waivers in *Trease v. State*, 41 So. 3d 119 (Fla. 2010):

> In *Durocher* [*v. Singletary*], 623 So. 2d [482,] 483 [(Fla. 1993)], this Court held that capital defendants who are competent can waive postconviction counsel and postconviction proceedings, reasoning "[i]f the right to representation can be waived at trial, we see no reason why the statutory right to collateral counsel cannot also be waived."  This Court explained that it "cannot deny [a death row inmate] his right to control his destiny to whatever extent remains." [*Id.*] at 484.  However, under such circumstances, this Court ruled that a *Faretta*-type inquiry was required to ensure that the waiver is knowing, intelligent, and voluntary. *Id.* at 485.  Specifically, this Court stated the following:
>
> > [W]e also recognize that the state has an obligation to assure that the waiver of collateral counsel is knowing, intelligent, and voluntary.  Accordingly, we direct the trial judge forthwith to conduct a *Faretta*-type evaluation of Durocher to determine if he understands the consequences of waiving collateral counsel and proceedings.  If the judge finds a proper waiver by Durocher, he shall report that finding to this Court and the instant petition will be dismissed.  If, however, Durocher does not understand the consequences of his decision, the judge shall report that fact to this Court and CCR will be allowed to proceed on Durocher's behalf.  The attorney general's office and CCR may attend the evaluation, but may not participate unless permitted to do so by the judge.  If the *Faretta*-type hearing raises questions in the judge's mind about Durocher's

competency, he may order a mental health evaluation and make a competency determination thereafter.

*Id.*

Following *Durocher*, this Court has consistently held that both postconviction counsel and proceedings may be waived so long as the waiver is voluntary, knowing, and intelligent. . . .

The procedures described in *Durocher* have been codified in rule 3.851(i), which applies when a defendant seeks to dismiss pending postconviction proceedings and discharge collateral counsel.

*Id.* at 123-24. Rule 3.851(i) states in pertinent part:

(7) If the court determines that the defendant has made the decision to dismiss pending postconviction proceedings and discharge collateral counsel knowingly, freely, and voluntarily, the court shall enter an order dismissing all pending postconviction proceedings and discharging collateral counsel. But if the court determines that the defendant has not made the decision to dismiss pending postconviction proceedings and discharge collateral counsel knowingly, freely, and voluntarily, the court shall enter an order denying the motion without prejudice.

(8) If the court grants the motion:

(A) a copy of the motion, the order, and the transcript of the hearing or hearings conducted on the motion shall be forwarded to the Clerk of the Supreme Court of Florida within 30 days; and

(B) discharged counsel shall, within 10 days after issuance of the order, file with the clerk of the circuit court 2 copies of a notice seeking review in the Supreme Court of Florida, and shall, within 20 days after the filing of the transcript, serve an initial brief. Both the defendant and the state may serve responsive briefs. Briefs shall be served as prescribed by rule 9.210.

(9) If the court denies the motion, the defendant may seek review as prescribed by Florida Rule of Appellate Procedure 9.142(b).

Fla. R. Crim. P. 3.851(i).

As the language of rule 3.851(i) indicates, postconviction waiver cases generally involve a defendant who seeks to waive both postconviction proceedings and counsel. *See, e.g.*, *Robertson v. State*, No. SC16-1297, 2016 WL 7043020, at *1 (Fla. Dec. 1, 2016); *Slawson v. State*, 796 So. 2d 491, 492 (Fla. 2001); *Durocher*, 623 So. 2d at 483. However, this case is atypical because Davis explicitly sought to waive only postconviction proceedings—not counsel—to preserve the right to raise potential future claims that may arise. While the State argues that the postconviction court should not have allowed counsel to remain on Davis's case because the postconviction waiver necessarily included a waiver of counsel and all future claims, a defendant has the right to enter a waiver to some or all postconviction claims.[8]

## THIS CASE

Although the validity of Davis's waiver is not challenged in this case, we conclude that the postconviction court did not abuse its discretion in determining that Davis's waiver was knowing, voluntary, and intelligent and, therefore, valid.

---

8. This case indicates that the language of rule 3.851(i) may be inconsistent with this Court's case law in two ways. First, the rule may not have contemplated partial waivers, such as here, where the defendant does not seek to waive both postconviction proceedings *and* counsel. Second, this Court's case law has interpreted waivers as encompassing all postconviction claims, possible future changes in the law, and execution-related challenges, despite the rule providing for the waiver of only "pending" claims. As a result, we refer this matter to the Criminal Court Steering Committee to consider possible revisions to rule 3.851(i).

The postconviction court also properly determined that Davis's waiver included his pending claim to *Hurst* relief. The record makes clear that Davis was aware that he was likely entitled to *Hurst* relief based on the jury's nonunanimous recommendation for death but nevertheless intended to waive that claim. *See Mosley*, 209 So. 3d at 1253; *Hurst*, 202 So. 3d at 44.

Consistent with the language of rule 3.851(i), the Postconviction Court's Order dismissed only Davis's pending claims. However, the colloquy made clear that Davis intended to permanently waive other claims, including those related to the guilt phase trial, the penalty phase trial, and the decision that death is the appropriate sentence in this case. Conversely, the record indicates that Davis also intended to retain counsel in order to preserve his ability to, if necessary, raise execution-related claims, such as challenging the intended method of execution or that he is otherwise ineligible for execution. Because Davis and his counsel made clear to the postconviction court that Davis did not intend to waive postconviction counsel or the right to bring execution-related claims, we conclude that the postconviction court properly allowed Davis to waive the instant proceedings while maintaining counsel.

**CONCLUSION**

For these reasons, we affirm the Postconviction Court's Order, finding Davis's waiver valid while permitting him to retain counsel for future claims, if any, related to his execution.

It is so ordered.

PARIENTE, LEWIS, QUINCE, LABARGA, and LAWSON, JJ., concur.
CANADY, C.J., concurs in result.
POLSTON, J., dissents with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

POLSTON, J., dissenting.

The majority's decision to affirm an order allowing Davis to waive only certain postconviction claims while retaining postconviction counsel to raise future claims violates our precedent as well as the plain language of Florida Rule of Criminal Procedure 3.851(i). Therefore, I respectfully dissent.

In *Durocher v. Singletary*, 623 So. 2d 482, 485 (Fla. 1993), this Court held that capital defendants who are competent may waive postconviction counsel and postconviction proceedings if, after a *Faretta*-type hearing, the trial court determines that the capital defendant "understands the consequences of waiving collateral counsel and proceedings." This Court's authorization of a postconviction waiver in *Durocher* was based upon this Court's reasoning that, "[i]f the right to representation can be waived at trial, we see no reason why the

statutory right to collateral counsel cannot also be waived." *Durocher*, 623 So. 2d at 483. [9] Further, this Court in *Durocher*, "[t]o forestall further argument, [also held] that CCR has no standing as a 'next friend' to proceed on Durocher's behalf." *Id.* at 485. Thus, *Durocher* only authorized a waiver of postconviction proceedings if the waiver was accompanied by a waiver of postconviction counsel.

"The procedures described in *Durocher* have been codified in rule 3.851(i), which applies when a defendant seeks to dismiss pending postconviction proceedings *and* discharge collateral counsel." *Trease v. State*, 41 So. 3d 119, 124 (Fla. 2010) (emphasis added). In fact, subsection 3.851(i)(1) (emphasis added), expressly explains that "[t]his subdivision applies *only* when a defendant seeks *both* to dismiss pending postconviction proceedings *and* to discharge collateral counsel." Subdivision 3.851(i)(6) requires "a complete (*Durocher/Faretta*) inquiry to determine whether the defendant knowingly, freely and voluntarily wants to dismiss pending postconviction proceedings *and* discharge collateral counsel," and subdivision 3.851(i)(7) specifies that, "[i]f the court determines that the defendant has made the decision to dismiss pending postconviction proceedings *and* discharge collateral counsel knowingly, freely, and voluntarily, the court shall

---

9. Of course, a majority of this Court has held that capital defendants may not appear pro se in any postconviction appeals. *See Gordon v. State*, 75 So. 3d 200 (Fla. 2011). This Court has also prohibited capital defendants from appearing pro se in direct appeals. *See Davis v. State*, 789 So. 2d 978 (Fla. 2001).

enter an order dismissing all pending postconviction proceedings." (Emphasis added.) However, "if the court determines that the defendant has not made the decision to dismiss pending postconviction proceedings *and* discharge collateral counsel knowingly, freely, and voluntarily, the court shall enter an order denying the motion without prejudice." Fla. R. Crim. P. 3.851(i)(7) (emphasis added).

Additionally, our precedent indicates that a valid waiver of both postconviction counsel and proceedings is a permanent waiver. "In *James*, 974 So. 2d 365 [(Fla. 2008)], this Court did not allow the reappointment of counsel to resume postconviction proceedings after a prior waiver of postconviction counsel and proceedings." *Trease*, 41 So. 3d at 125-26. In *James*, 974 So. 2d at 368, this Court held that "a mere change of mind is an insufficient basis for setting aside a previous waiver." This Court also prohibited reinstatement of postconviction counsel and postconviction proceedings in *Trease*, 41 So. 3d at 126, reasoning as follows:

> If this Court were to allow Trease to reinstate his postconviction proceedings based upon a mere change of mind, there would be nothing to stop Trease from changing his mind again at a later date. In fact, based upon Trease's history, this is a likely scenario. Then, the trial court would be required to conduct another *Durocher* hearing because Trease has a right to waive postconviction counsel and proceedings. Thereafter, Trease could again change his mind, and the trial court would be required to reinstate the postconviction proceedings. The cycle could continue indefinitely. *Cf. Waterhouse v. State*, 596 So. 2d 1008, 1014 (Fla. 1992) ("[A] defendant may not manipulate the proceedings by willy-nilly leaping back and forth between the choices [of self-representation and

- 17 -

appointed counsel].'' (quoting *Jones v. State*, 449 So. 2d 253, 259 (Fla. 1984))).

To summarize, our precedent and the plain language of the rule contemplate a valid waiver to be permanent and to include a waiver of all postconviction proceedings as well as a waiver of postconviction counsel. In other words, contrary to the majority's holding today, our precedent and the plain language of the rule do not authorize a partial waiver of only some postconviction claims while retaining postconviction counsel to raise postconviction claims at some point in the future. Accordingly, I respectfully dissent.[10]

An Appeal from the Circuit Court in and for Seminole County,
John D. Galluzzo, Judge - Case No. 592009CF005140A000XX

James Vincent Viggiano, Jr., Capital Collateral Regional Counsel, Maria Christine Perinetti, Raheela Ahmed, and Lisa Marie Bort, Assistant Capital Collateral Regional Counsel, Middle Region, Temple Terrace, Florida,

    for Appellant

Pamela Jo Bondi, Attorney General, Tallahassee, Florida, and Christina Z. Pacheco, Assistant Attorney General, Tampa, Florida,

    for Appellee

---

10. I would be open to amending rule 3.851(i) to provide a mechanism for raising narrow claims, with representation, relating to execution, including claims that the defendant is incompetent or that the execution method is unconstitutional.