41 So.3d 119 (2010)
Robert J. TREASE, Appellant,
v.
STATE of Florida, Appellee.
Robert J. Trease, Petitioner,
v.
Walter A. McNeil, etc., Respondent.
Nos. SC07-1353, SC08-792.
Supreme Court of Florida.
June 24, 2010.
*120 Mark E. Olive, Tallahassee, Florida, and Thomas H. Dunn, Atlanta, GA, for Appellant/Petitioner.
Bill McCollum, Attorney General, Tallahassee, Florida, and Stephen D. Ake, Assistant Attorney General, Tampa, FL, for Appellee/Respondent.
PER CURIAM.
Discharged counsel appeals the trial court's order granting Robert J. Trease's pro se motion to waive postconviction counsel and proceedings.[1] For the reasons explained below, we affirm the trial court's order, and we deny Trease's subsequent request to reinstate his postconviction proceedings.

I. BACKGROUND
In 2000, this Court affirmed Trease's conviction for first-degree murder and his death sentence. Trease v. State, 768 So.2d 1050 (Fla.2000). We outlined the facts of the crime as follows:
On August 17, 1995, Hope Siegel arranged a date with the victim, Paul Edenson, so Trease could learn where the victim hid his safe. When Siegel arrived at the victim's home they talked for a while, after which Siegel departed and walked to Trease's location, and told him that the victim did not have a safe. Trease followed her back to the victim's house where he surprised the victim and battered him in an effort to get the sought-after information. Upon the victim's insistence that he did not have a safe in the house, Trease told Siegel to get a gun which Trease put to the victim's head as he continued the questioning. The victim remained uncooperative so Trease fired a nonlethal bullet into his head and then sent Siegel for a knife with which he cut the victim's throat. An expert medical witness testified that the victim would have died a few minutes later.
Subsequent to their arrest, Trease denied any knowledge of the crime, but Siegel made a taped statement implicating both. The State had no physical evidence tying Trease to the crime, so Siegel's testimony was critical at trial. The jury found Trease guilty of first-degree murder, burglary, and robbery with a firearm.
Id. at 1052.[2]
In March 2001, Trease filed a pro se motion to waive postconviction counsel and *121 postconviction proceedings. After holding a hearing and conducting a Faretta[3]-type inquiry in May 2001, the trial court found Trease competent and discharged Trease's collateral counsel.
In June 2002, Trease filed a motion in the trial court asking to reinstate his postconviction proceedings and authorizing current discharged counsel to represent him. In October 2002, the trial court granted the motion and reinstated Trease's postconviction motion. During the reinstated postconviction proceedings, Trease again indicated a desire to waive postconviction counsel and proceedings. However, this time the trial court informed Trease and counsel that it would not remove counsel until the postconviction motion was resolved. The trial court denied Trease's postconviction motion on May 9, 2007.
In July 2007, defense counsel filed a notice of appeal of the trial court's denial of the postconviction motion. And to date, counsel has filed an initial brief and a habeas petition in this Court. However, on April 22, 2008, Trease filed a pro se motion to discharge his counsel in the trial court, which the trial court dismissed for lack of jurisdiction.
On May 6, 2008, Trease filed an Emergency Motion to Dismiss Appellate Counsel and End All Further Appellate Review in this Court.[4] Thereafter, on May 9, 2008, the State filed a motion to relinquish jurisdiction for the purpose of conducting a hearing as required by Durocher v. Singletary, 623 So.2d 482 (Fla.1993), and Florida Rule of Criminal Procedure 3.851(i). On June 19, 2008, this Court granted the State's motion and temporarily relinquished jurisdiction to the trial court to conduct the proceedings required by rule 3.851(i) and Durocher.
On October 2, 2008, the trial court held the Durocher hearing with Trease physically present in the courtroom. The trial court began by asking Trease about his background. Trease responded that he had completed the eleventh grade, that he read and spoke English, was fifty-five years old, had owned his own computer chip company, was not on medication, and had never been diagnosed with any mental disease or defect "except for when they're trying to win something in court." The trial court explained that Trease had three options: (1) allow counsel to continue with the postconviction proceedings; (2) proceed pro se; or (3) discharge counsel and waive postconviction relief. Trease stated that he wished to discharge counsel and waive postconviction proceedings. Then, the following transpired:
Court: Why don't you tell me in your own words why it is that you want to have Mr. Dunn and Mr. Olive discharged and whether you want to abandon your post conviction proceedings.
Trease: Well, it's fairly simple. I'm essentially tired of living the life that I'm living, and I'm just not going to do it any longer, and these are the reasons. And be [sic] the Florida Supreme Court, I have the right to end my appeals.

*122 Court: I understand that, but do you understand that if in fact you are successful in your post conviction proceedings, that that could end up in aresult in a new trial or a resentencing in your case?
Trease: Yes, I know all that, Judge.
Court: I know, but I have to ask you these questions.
Trease: Yes, I'm well aware of that and well aware of that I would more than likely win, seeing that I'm not guilty.
Court: Do you understand that if your lawyers are dismissed and your appellate review, your post conviction action is dismissed, that could result in waiver of any legal barriers to the State's ability to enforce the death penalty in this case.
Trease: Well aware of that, your Honor. Well aware of that.
Court: Do you understand your right to further appeal will be forever lost?
Trease: I also understand that.
Court: Are you aware that if the Court grants this motion, you may be barred from filing further pro se or self-represented petitions seeking review.
Trease: Yes, Judge, I do.
Court: Are you aware that your ability to file for release in federal court might be affected by dismissing the state court proceeding?
Trease: I'm well [aware] of that as well, Judge.
Court: In other words, this could basically mean that this case is over.
Trease: Yes, sir, I understand these things.
Court: This court does not recommend that you either discharge your counsel or abandon your post conviction proceedings. Notwithstanding that, do you also understand that you can represent yourself if you choose to do so?
Trease: I understand these things as well, Judge.
Court: Is your decision to dismiss your lawyers entirely voluntary on your part?
Trease: Yes, sir, it is.
Court: Is your decision to end appellate review entirely voluntary on your part?
Trease: Yes, it is.
When questioned by his counsel, Trease indicated that he was satisfied with his legal representation. And when counsel asked whether Trease had indicated to his counsel that he wanted to fight, Trease explained, "I told you I was going to fight because I[k]new once we got in front of a judge, had I not told you that, you would have come up with these lame excuses of him [sic] being retarded or brain damage or what they do at every trial." Trease also admitted that he had a good postconviction case.
During the Durocher hearing, defense counsel argued that, while Trease is intelligent and understands the proceedings, he suffers from organic brain damage and was abused by his father. Defense counsel stated that Trease will again change his mind as a result of the trauma in his childhood, his inability to regulate his emotions, and the harsh conditions of being under a continuous death warrant. Further, counsel stated that he had "questions" regarding Trease's competency.
After the Durocher hearing, the trial court issued an order finding that (1) Trease is fully aware of all the consequences, (2) Trease is competent, and (3) Trease's decision to discharge counsel and dismiss all further proceedings is knowing, intelligent, and voluntary. Accordingly, the trial judge granted Trease's motion to dismiss counsel and end further appellate review. This appeal by discharged counsel followed as required by rule 3.851(i).
*123 On December 22, 2008, Trease filed in this Court a pro se motion to dismiss the appeal of the trial court's waiver order, arguing that discharged counsel lacked standing. But, after reading the initial brief filed by discharged counsel, Trease sent a letter to Tom Hall, the Clerk of this Court, stating: "I wish on this date2-10-09 to go forward with my 3.850 and not give up my appeals."[5] Thereafter, on February 25, 2009, this Court directed discharged counsel to address whether the trial court abused its discretion in granting Trease's pro se motion to waive postconviction counsel and proceedings and to address whether this Court should consider Trease's pro se letter dated February 10, 2009, which essentially asks this Court to reinstate postconviction proceedings.

II. ANALYSIS
Because the trial court properly followed the procedures outlined in Durocher and rule 3.851(i), we affirm its order granting Trease's motion to waive postconviction counsel and proceedings. Furthermore, following our precedent, we deny Trease's subsequent request to reinstate his postconviction proceedings.

A. Durocher Hearing
In Durocher, 623 So.2d at 483, this Court held that capital defendants who are competent can waive postconviction counsel and postconviction proceedings, reasoning "[i]f the right to representation can be waived at trial, we see no reason why the statutory right to collateral counsel cannot also be waived." This Court explained that it "cannot deny [a death row inmate] his right to control his destiny to whatever extent remains." Durocher, 623 So.2d at 484. However, under such circumstances, this Court ruled that a Faretta-type inquiry was required to ensure that the waiver is knowing, intelligent, and voluntary. Id. at 485. Specifically, this Court stated the following:
[W]e also recognize that the state has an obligation to assure that the waiver of collateral counsel is knowing, intelligent, and voluntary. Accordingly, we direct the trial judge forthwith to conduct a Faretta-type evaluation of Durocher to determine if he understands the consequences of waiving collateral counsel and proceedings. If the judge finds a proper waiver by Durocher, he shall report that finding to this Court and the instant petition will be dismissed. If, however, Durocher does not understand the consequences of his decision, the judge shall report that fact to this Court and CCR will be allowed to proceed on Durocher's behalf. The attorney general's office and CCR may attend the evaluation, but may not participate unless permitted to do so by the judge. If the Faretta-type hearing raises questions in the judge's mind about Durocher's competency, he may order a mental health evaluation and make a competency determination thereafter.
Id.
Following Durocher, this Court has consistently held that both postconviction counsel and proceedings may be waived so long as the waiver is voluntary, knowing, and intelligent. See James v. State, 974 So.2d 365 (Fla.2008); Alston v. State, 894 So.2d 46 (Fla.2004); Slawson v. State, 796 So.2d 491 (Fla.2001); Castro v. State, 744 So.2d 986 (Fla.1999); Sanchez-Velasco v. State, 702 So.2d 224 (Fla.1997). Moreover, this Court has "allowed competent death-sentenced individuals, who have made a *124 knowing, intelligent, and voluntary waiver of their rights to collateral counsel and proceedings, to implement that waiver without a resolution of the collateral claims that were pending before us." Slawson, 796 So.2d at 501 (citing Castro, 744 So.2d 986, and Sanchez-Velasco, 702 So.2d 224).
The procedures described in Durocher have been codified in rule 3.851(i), which applies when a defendant seeks to dismiss pending postconviction proceedings and discharge collateral counsel. Rule 3.851(i) requires the trial judge to hold a hearing, and, if the defendant is found to be competent, the trial court is required to conduct an inquiry to determine whether the prisoner knowingly and voluntarily wishes to discharge counsel and dismiss postconviction proceedings. Under rule 3.851(i), if the trial judge grants the motion, discharged counsel must seek review in this Court.[6]
This Court reviews a trial court's order finding a voluntary, knowing, and intelligent waiver of postconviction counsel and proceedings for an abuse of discretion. Alston, 894 So.2d at 57. A trial court's ruling regarding competency to waive is also subject to this Court's review for an abuse of discretion. Id. Further, "the relevant *125 test for competency in the context of waiving collateral counsel and collateral proceedings in Florida is whether the person seeking waiver has the capacity to `understand[ ] the consequences of waiving collateral counsel and proceedings.'" Slawson, 796 So.2d at 502 (quoting Durocher, 623 So.2d at 485). Finally, "the party challenging the defendant's waiver request bears the burden of proving that the defendant is incompetent." Id.
In this case, the transcript of the Durocher hearing reflects that the trial court conducted a Faretta-type evaluation of Trease, eliciting that Trease had completed eleventh grade, that he wrote and spoke English, was fifty-five years old, had owned his company, and was not on medication. Additionally, the transcript reflects that Trease understood the consequences of waiving postconviction counsel and proceedings. Trease stated that he understood his right to appeal would be forever lost and that he was voluntarily waiving postconviction counsel and proceedings. He exhibited an understanding that there would be nothing in the way of the State carrying out his death sentence. On the basis of this record, we conclude that the trial court complied with the standards applicable to a waiver of postconviction counsel and proceedings. Therefore, the trial court did not abuse its discretion in discharging postconviction counsel and dismissing postconviction proceedings.
Discharged counsel argues that Trease's frequent changes of mind regarding whether to waive postconviction proceedings, while also professing his innocence and acknowledging his compelling constitutional claims, establish that his actions are the result of organic brain damage, not the result of a knowing, intelligent, and voluntary waiver. However, the trial court had previously determined in 2001 that Trease was competent to waive post-conviction counsel and proceedings. And in its most recent order, the trial court again found the defendant competent, explaining that "[t]he defendant repeatedly exhibited a cogent and knowledgeable understanding of the consequences of his decision."
Importantly, discharged counsel had the burden to prove incompetency. See Slawson, 796 So.2d at 502. But during the Durocher hearing, discharged counsel did not proffer expert testimony indicating that Trease was incompetent. Cf. Castro, 744 So.2d at 987 ("CCRC proffered the testimony of Dr. Jethro Toomer, who testified that Castro was not competent to waive counsel. Based on this testimony, the circuit court found that CCRC had called Castro's competence into question."). To the contrary, discharged counsel acknowledged during the Durocher hearing that Trease was intelligent and understood the nature of the proceedings. In addition, this Court has affirmed a waiver despite the fact the defendant had previously changed his mind regarding his desire to waive postconviction counsel and proceedings. See Castro, 744 So.2d at 987. Therefore, the trial court did not abuse its discretion in finding Trease competent to waive postconviction counsel and proceedings.
Accordingly, we affirm the trial court's order dismissing Trease's postconviction counsel and proceedings.

B. February 2009 Letter
Based upon Trease's February 2009 letter indicating a renewed desire to proceed with postconviction proceedings, discharged counsel argues that this Court should either reinstate Trease's postconviction appeal or remand for another Durocher hearing. We deny Trease's request.
In James, 974 So.2d 365, this Court did not allow the reappointment of counsel to *126 resume postconviction proceedings after a prior waiver of postconviction counsel and proceedings. Specifically, James filed a postconviction motion in 1998 but then filed a pro se notice of voluntary dismissal of the postconviction proceedings in 2003. James, 974 So.2d at 366. "The trial court [in 2003] held a hearing to determine whether James was competent and fully understood the consequences of dismissing the postconviction motion filed on his behalf." Id. "[T]he 2003 hearing was conducted in complete accord with [this Court's] opinion in Durocher." Id. at 368. After the hearing, the trial court discharged postconviction counsel and allowed James to withdraw the postconviction motion. Id. at 366. Then, in 2005, James changed his mind, and collateral counsel filed a motion in the trial court to reinstate the postconviction proceedings. Id. After a hearing, the trial court denied the motion to reinstate. Id. On appeal of that denial, this Court noted that James was not attacking the validity of the prior waiver. Id. at 368. Instead, "James has simply changed his mind and has decided he wants `to take up [his] appeals again.'" Id. This Court held that "a mere change of mind is an insufficient basis for setting aside a previous waiver." Id. Therefore, this Court affirmed the trial court's denial of James' motion to reinstate postconviction proceedings. Id.
Like the defendant's motion in James, Trease's pro se letter does not contest the validity of the Durocher hearing. Instead, Trease's letter indicates that he simply changed his mind. Based upon this Court's holding in James, this mere changing of his mind is an insufficient basis for setting aside his prior valid waiver.
If this Court were to allow Trease to reinstate his postconviction proceedings based upon a mere change of mind, there would be nothing to stop Trease from changing his mind again at a later date. In fact, based upon Trease's history, this is a likely scenario. Then, the trial court would be required to conduct another Durocher hearing because Trease has a right to waive postconviction counsel and proceedings. Thereafter, Trease could again change his mind, and the trial court would be required to reinstate the postconviction proceedings. The cycle could continue indefinitely. Cf. Waterhouse v. State, 596 So.2d 1008, 1014 (Fla.1992) ("[A] defendant may not manipulate the proceedings by willy-nilly leaping back and forth between the choices [of self-representation and appointed counsel]." (quoting Jones v. State, 449 So.2d 253, 259 (Fla.1984))).
Accordingly, because this Court in James held that a change of mind is insufficient grounds to set aside a prior valid waiver, we deny Trease's request to reinstate his postconviction proceedings.

III. CONCLUSION
For the reasons expressed above, we affirm the trial court's order, and we deny Trease's subsequent request to reinstate his postconviction proceedings. Accordingly, we dismiss the appeal of the denial of Trease's postconviction motion and his petition for a writ of habeas corpus.
It is so ordered.
QUINCE, C.J., and LEWIS, POLSTON, LABARGA, and PERRY, JJ., concur.
PARIENTE, J., dissenting with an opinion.
CANADY, J., recused.
PARIENTE, J., dissenting.
I dissent because the procedural posture of the case and the issues raised in the pending appeal about Trease's possible innocence trump our interests in finality. *127 By not allowing Trease to proceed with his appeal of the denial of postconviction relief, we run the risk of Trease being executed without this Court having had the opportunity to review his postconviction claims of innocence.[7]
While Trease has changed his mind regarding whether to proceed with his postconviction proceedings (which his counsel attributes to organic brain damage and trauma), Trease has also consistently maintained his innocence. The appeal from the denial of his postconviction motion, which is still pending before this Court, raises significant issues touching upon his guilt. These issues include questions on the now-discredited compositional bullet lead analysis,[8] which was used by the testifying FBI expert to match bullet fragments found at the crime scene to a bullet removed from a pistol in Trease's possession. The State used this now-debunked science to corroborate testimony of Trease's codefendant, who testified that she witnessed Trease murder the victim. Because there was no physical evidence tying Trease to the crime, her "testimony was critical at trial." Trease, 768 So.2d at 1050. Trease also claims that newly discovered evidence establishes that she admitted to murdering the victim.
The question is whether these claims of innocence raised in Trease's first post-conviction motion should outweigh this Court's interests in the finality of the waiver and legitimate concerns about a defendant who continually changes his mind. In James v. State, 974 So.2d 365, 368 (Fla.2008), a decision in which I concurred, we were concerned that "a mere change of mind" not in itself constitute a sufficient basis for setting aside a previous waiver. We emphasized that the procedures set forth in Durocher[9] regarding the ability of a death-sentenced defendant to waive further attacks on his conviction and penalty were mandated so that the defendant would "fully understand the consequences and finality attached to a waiver" while also "respecting his wishes to determine his fate." Id.
However, I consider James to be distinguishable from this case in two ways. First, in James, the defendant's change of mind requesting reinstatement of counsel and resumption of postconviction proceedings occurred over two years after he voluntarily dismissed his postconviction proceedings. Id. at 366. In this case, Trease's request to resume the appeal of his postconviction proceedings occurred while the appeal of his dismissal of counsel and waiver of postconviction proceedings were still pending in this Court. Second, in James, we were reviewing solely the trial court's decision to deny reappointment of counsel and reinstatement of postconviction proceedings. Here, Trease actually proceeded with his initial postconviction motion while represented by counsel, and the trial court denied relief. That order of denial is on appeal in this Court, and an initial brief on the merits has been filed.
*128 We have recognized that "death is different." See, e.g., State v. Davis, 872 So.2d 250, 254-55 (Fla.2004). The chance that there may be issues regarding Trease's guilt and a possible claim of innocence should weigh in favor of our allowing this appeal to proceed to conclusion on the merits. We should err on the side of caution to avoid the chance of Trease being executed with outstanding unresolved questions about his guilt and possible innocence.
For the above reasons, I would allow the appeal to proceed on the merits.
NOTES
[1] We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const.
[2] "The trial court found the following statutory aggravating factors: (1) previous violent felonies against persons; and that the murder was committed (2) while engaged in a burglary or robbery, (3) to avoid arrest, and (4) for pecuniary gain; and (5) the murder was heinous, atrocious or cruel." Trease, 768 So.2d at 1053 n. 1 (emphasis omitted). And the trial court found the following mitigating factors: (1) Trease was abused as a child; (2) Trease adjusted to incarceration and helped prevent an inmate's suicide; and (3) Siegel was disparately sentenced. Id.
[3] Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).
[4] Between September 2007 and November 2008, Trease also sent four letters addressed to three justices, stating that he did not wish to appeal the denial of his postconviction motion.
[5] In a separate letter to the State, Trease indicated that "after reading their briefI've changed my mind, I wish to go forward with my 3.850." Trease also indicated that he changed his mind in a letter to the trial judge in February 2009.
[6] Before this rule, there was no standard vehicle for this Court to review the waiver order. Now such review is automatic. James, 974 So.2d at 368 n. 4. Specifically, rule 3.851(i) provides the following:

(1) This subdivision applies only when a prisoner seeks both to dismiss pending postconviction proceedings and to discharge collateral counsel.
(2) If the prisoner files the motion pro se, the Clerk of the Court shall serve copies of the motion on counsel of record for both the prisoner and the state. Counsel of record may file responses within ten days.
(3) The trial judge shall review the motion and the responses and schedule a hearing. The prisoner, collateral counsel, and the state shall be present at the hearing.
(4) The judge shall examine the prisoner at the hearing and shall hear argument of the prisoner, collateral counsel, and the state. No fewer than two or more than three qualified experts shall be appointed to examine the prisoner if the judge concludes that there are reasonable grounds to believe the prisoner is not mentally competent for purposes of this rule. The experts shall file reports with the court setting forth their findings. Thereafter, the court shall conduct an evidentiary hearing and enter an order setting forth findings of competency or incompetency.
(5) If the prisoner is found to be incompetent for purposes of this rule, the court shall deny the motion without prejudice.
(6) If the prisoner is found to be competent for purposes of this rule, the court shall conduct a complete (Durocher/Faretta) inquiry to determine whether the prisoner knowingly, freely and voluntarily wants to dismiss pending postconviction proceedings and discharge collateral counsel.
(7) If the court determines that the prisoner has made the decision to dismiss pending postconviction proceedings and discharge collateral counsel knowingly, freely and voluntarily, the court shall enter an order dismissing all pending postconviction proceedings and discharging collateral counsel. But if the court determines that the prisoner has not made the decision to dismiss pending postconviction proceedings and discharge collateral counsel knowingly, freely and voluntarily, the court shall enter an order denying the motion without prejudice.
(8) If the court grants the motion:
(A) a copy of the motion, the order, and the transcript of the hearing or hearings conducted on the motion shall be forwarded to the Clerk of the Supreme Court of Florida within 30 days; and
(B) discharged counsel shall, within 10 days after issuance of the order, file with the clerk of the circuit court 2 copies of a notice seeking review in the Supreme Court of Florida, and shall, within 20 days after the filing of the transcript, serve an initial brief. Both the prisoner and the state may serve responsive briefs. Briefs shall be served as prescribed by rule 9.210.
(9) If the court denies the motion, the prisoner may seek review as prescribed by Florida Rule of Appellate Procedure 9.142.
[7] These issues were raised in his postconviction proceedings as claims of ineffective assistance of counsel, newly discovered evidence, and violations of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
[8] In 2005, after Trease's conviction, the FBI discontinued the use of bullet lead analysis after it concluded that there was an "inability of scientists and manufacturers to definitively evaluate the significance of an association between bullets made in the course of a bullet lead examination." Press Release, Fed. Bureau of Investigation, FBI Laboratory to Increase Outreach in Bullet Lead Cases (Nov. 17, 2007), available at http://www.fbi.gov/ pressrel/pressrel07/bulletlead111707.htm.
[9] Durocher v. Singletary, 623 So.2d 482 (Fla. 1993).