LEWIS, J, dissenting. Today this Court advances for the first time a new excuse, not a valid reason, to push Florida’s death penalty jurisprudence into an unconstitutional abyss. This case is a classic example which illustrates application of this Court’s retroactivity approach to Hurst v. Florida, — U.S. -, 136 S.Ct. 616, 193 L.Ed.2d 504 (2016), and Hurst v. State, 202 So.3d 40 (Fla. 2016), to deny relief to defendants who have fully and completely preserved the constitutional challenges to Florida’s death sentencing scheme. This new denial approach results in equal protection and due process violations, constitutes cruel and unusual punishment, and the arbitrary and capricious operation of the death penalty. The Court simply turns its eyes from the violation of the Sixth, Eighth, and Fourteenth Amendments under the United States Constitution and the' corresponding provisions under our Florida Constitution. The construction of our current death penalty dilemma finds its origin in the issuance of Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Although it was not a death penalty case, our high court in Apprendi addressed the issue of requiring a unanimous jury vote for certain factors. Two years later, in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), the United States Supreme Court applied the principles of Apprendi to capital defendants, holding that capital defendants “are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment.” Ring, 536 U.S. at 589, 122 S.Ct. 2428. For years after Ring, defendants facing the death penalty in Florida, including Silvia, attempted to rely on and asserted that Ring required a unanimous jury verdict to support a valid death penalty judgment. Over and over and over again the concept addressed in Ring with regard to unanimous jury verdicts was denied application in death penalty proceedings in Florida. E.g., Pietri v. State, 885 So.2d 245, 276 (Fla. 2004) (denying relief because the felony murder aggravator involved “circumstances submitted to a jury and found to exist beyond a reasonable doubt”); Sochor v. State, 883 So.2d 766, 790 (Fla. 2004) (“We previously have addressed this [Ring] claim and denied relief.”); Kimbrough v. State, 886 So.2d 965, 984 (Fla. 2004) (“This Court has previously declined to hold that Florida’s death penalty scheme is unconstitutional on the basis of Apprendi or Ring.”). It was not until January 12, 2016, when the United States Supreme Court issued Hurst v. Florida that the “fundamental constitutional right” requiring a unanimous jury verdict arose in death penalty proceedings constructed and built upon the foundational principles announced earlier in Ring. With the issuance of Hurst v. Florida, the logical question arose as to how it would be applied and the extent to which it would be retroactively applied to those pending execution of a death sentence. That retroactivity question was answered, in part, by this Court in Asay v. State, 210 So.3d 1 (Fla. 2016), when the Court held that Hurst would retroactively apply to only those cases in which the death penalty had been imposed on or after the date Ring had been issued in 2002. At that time, I reasoned in Asay that Hurst should also apply to cases prior to 2002 if the issue- of requiring a unanimous jury verdict had been properly preserved for review in the proceedings even prior to Ring, relying on James v. State (James I), 615 So.2d 668, 669 (Fla. 1998). Asay, 210 So.3d at 30 (Lewis, J., concurring in result). The Court rejected that reasoning and adopted a fixed retroactive date. Within these parameters, cases began flowing to this Court in successive postcon-viction motions. Those cases that became final after Ring with unanimous jury' verdicts for death were denied relief. E.g., King v. State, 211 So.3d 866, 889-93 (Fla. 2017); Davis v. State, 207 So.3d 142, 174-75 (Fla. 2016). Defendants in cases that became final after Ring in which the defendants had totally waived a penalty phase jury trial were also denied relief. Mullens v. State, 197 So.3d 16, 38-40 (Fla. 2016). Until this time, in all other cases in which less than a unanimous jury verdict for death was returned, the judgment for death has been quashed and the cases remanded to the trial court for proceedings consistent with Hurst without regard to any preservation issues. Even those cases in which defendants conceded during oral argument that Ring did not apply to Florida death cases based on existing Florida law have received the benefit of Hurst, but Silvia will not simply because he did not come to this Court for an oral argument on a postconviction motion having preserved the issue at trial and on direct appeal. We now face Silvia in which Silvia has received a post-Ring, nonunanimous death penalty verdict. Silvia v. State, 60 So.3d 959, 966 (Fla. 2011). By now, it is well-established Florida law that Hurst requires unanimity and applies retroactively to “defendants whose sentences became final after the United States Supreme Court issued its opinion in Ring.” Mosley v. State, 209 So.3d 1248, 1276 (Fla. 2016). Thus, regardless of the majority’s unwillingness to mention this fact, Hurst applies retroactively to Silvia’s case. E.g., Hojan v. State, 212 So.3d 982, 999 (Fla. 2017) (“Hurst applies] retroactively to defendants, like Hojan, whose sentences were not yet final when the Supreme Court issued Ring.”). There. have been many post-Ring, nonunanimous defendants whose various appeals and postconviction motions were correctly resolved when this Court granted .them Hurst relief. See., e.g., Gregory v. State, 224 So.3d 719 (Fla. 2017) (post-Ring, nonunanimous postconviction motion defendant); Jeffries v. State, 222 So.3d 538 (Fla. 2017) (post-Ring, nonunani-mous direct appeal defendant); Bailey v. Jones, 225 So.3d 776 (Fla. 2017) (post-Ring, nonunanimous habeas corpus petition defendant). In view of these cases, the appropriate disposition is clear. Yet, for the first time, the majority decision eschews recent precedent and denies Hurst relief to a post-Ring, nonunanimous defendant because he did not continue a merit-less, fruitless—and at that point frivolous—Ring challenge in the context of a postconviction proceeding even though he had asserted that right during trial and on direct appeal and had fully preserved the argument for appellate purposes. Silvia, 60 So.3d at 978. Silvia was not even required to file' for postconviction relief but did file and later withdrew his meritless pleading. This arbitrary denial of rights treats similarly situated defendants differently. In doing so, Silvia is being denied equal protection and due process under the law, violating his rights under the Fourteenth Amendment and article I, section 2 of the Florida Constitution. Although not specifically stated, the basis for this decision is simple, albeit misguided. However, by skirting the underlying law, the majority disregards the real substance of the question presented and develops a holding absent any precedential support. The decision impliedly relies upon the concept regarding a waiver of postcon-viction proceedings. See - majority op. at 350-51, As a general matter, this Court has held that the waiver of postconviction proceedings is a final determination. See Trease v. State, 41 So.3d 119, 126 (Fla. 2010); James v. State (James II), 974 So.2d 365, 368 (Fla. 2008). Nevertheless, neither Trease nor James II determinatively answers the issue in this case. Our James II holding was actually quité narrow: “[W]e conclude that a mere change of mind' is an insufficient basis for setting aside a previous waiver,” James II, 974 So.2d at 368 (emphasis added). We explained that James could not overcome his waiver because there was no dispute that the Durocher[1] proceedings were followed and James “asserted no valid basis for avoiding his waiver.” James II, 974 So.2d at 368. Likewise, as it concerned reversing the waiver of , postconviction proceedings, Trease held that “because this Court in James[ II] held that a ‘change of mind is insufficient grounds to set aside a prior valid waiver, we deny Trease’s request to reinstate his postconviction proceedings.” Trease, 41 So.3d at 126. Trease and James II are factually distinguishable from this case because, here, Silvia did not simply change his mind like the defendants in those cases. Instead, the trial court here— which is better positioned than this Court to determine Silvia’s intentions—specifically found that Silvia “is not seeking to reinstate his previously waived postconviction proceedings because he has changed his mind. Rather he is seeking to avail himself of a newly established constitutional right, which. has been held to apply retroactively.” As a result, the trial court here vacated Silvia’s death sentence. In my view, the constitutional rights generated by Hurst are a sufficient basis, to avoid Silvia’s waiver. Cf. James II, 974 So.2d at 368 (changing of the mind was not a sufficient basis): Such a scenario is specifically contemplated as an exception to the time limitation on postconviction motions, under Florida Rule of Criminal Procedure 3.851: (2) No motion shall be filed or considered pursuant to this rule if filed beyond the time limitation provided in subdivision (d)(l)[2] unless it alleges: [[Image here]] (B) the. fundamental constitutional right asserted was not established within the period provided for in subdivision (d)(1) and has been held to apply retroactively .... Fla. R. Crim. P. 3.851(d)(2)(B). Accordingly, nothing in Florida law precludes Silvia from raising a Hurst claim. In the past, this Court has granted relief on changes in the law retroactively to post-conviction defendants who preserved the issue for review on their direct appeal prior to the change. James I, 615 So.2d at 669. In James I, we granted relief to a defendant who had asserted at trial and on direct-appeal that the jury instruction pertaining to the heinous; atrocious, or cruel aggravating circumstance was unconstitutionally vague before the United States Supreme Court ultimately reached that same conclusion in Espinosa v. Florida, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992). James I, 615 So.2d at 668-69. We concluded that—despite his case be coming final before the principle of law had a case name—it would be unjust to deprive James of the benefit of the Supreme Court’s holding in Espinosa after he had properly presented and preserved such a claim. James I, 615 So.2d at 669. Similarly, I believe that defendants who properly preserved the substance of a Ring challenge at trial and on direct appeal prior to that decision should also be entitled to have their constitutional challenges heard. Hitchcock v. State, 226 So.3d 216, 218-19 (Fla. 2017) (Lewis, J., concurring in result); Asay, 210 So.3d at 30 (Lewis, J., concurring in result). Similar to the defendant in James I, Silvia properly preserved his Ring challenge at trial and on direct appeal. Silvia, 60 So.3d at 978. Therefore, Silvia is entitled to Hurst relief. He could not validly waive a constitutional right that simply did not exist at the time of the alleged waiver. In Mosley, this Court recognized that “fundamental .fairness alone may .require the retroactive application of certain decisions involving the death penalty after the United States Supreme Court decides a case that changes our jurisprudence.” Mosley, 209 So.3d at 1274-75. There, we cited James I and held that, “because Mosley raised a Ring claim at his first opportunity and was then rejected at every turn, we conclude that fundamental fairness requires the retroactive application of Hurst, which defined the effect of Hurst v. Florida, to Mosley.” Mosley, 209 So.3d at 1275. In that case, we further conducted a standard retroactivity analysis under Witt v. State, 387 So.2d 922 (Fla. 1980); however, Mosley clearly stands for the proposition that, under James I, it is fundamentally unfair to withhold Hurst relief to post-Ring, nonunanimous defendants who properly raised the issue, regardless of whether they are in this Court on direct appeal or postconviction • motion. Mosley, 209 So.3d at 1274-75. Therefore, to deny Hurst relief to Silvia is a violation of his right to due process under the Fourteenth Amendment and article I, section 9 of the Florida Constitution. See Gore v. State, 719 So.2d 1197, 1203 (Fla. 1998) (“Due process requires that fundamental fairness be observed in each case, for each defendant.”). As a practical matter, if Silvia had merely re-raised his Ring claim in a postconviction motion, then he would be entitled to Hurst relief. Yet, at the time of his post-conviction proceedings, any Ring challenge by Silvia was futile, meritless, and frivolous. See Johnson v. State, 904 So.2d 400, 406 (Fla. 2005) (“[V]irtually every postcon-viction appeal filed in this Court since Ring invokes that case. We repeatedly have denied such requests for clear lack of merit .....”), abrogated by Jackson v. State, 213 So.3d 754 (Fla. 2017). Moreover, under this Court’s broader postconviction standard, it would have been inappropriate for Silvia to continue his Ring challenge through postconviction proceedings. This Court has stated, The purpose of the Rule 3.850[3] motion is to provide a means of inquiry into the alleged constitutional infirmity of .a 'judgment or sentence, not to review ordinary trial errors cognizable by means of a direct appeal. The motion procedure is neither a second appeal nor a substitute for appeal. Matters which were raised on appeal and decided adversely to the movant are not cognizable by motion under Rule 3.850. Furthermore, any matters which could have been presented on appeal are similarly held to be foreclosed from consideration by motion under the Rule. Therefore, a Rule 3.850 motion based upon grounds which either were or could have been raised as issues on appéal may be summarily denied. McCrae v. State, 437 So.2d 1388, 1390 (Fla. 1983) (emphasis added) (citations omitted). Silvia properly preserved the error and unsuccessfully challenged Ring at trial and on direct appeal. Silvia, 60 So.3d at 978. Therefore, there was nothing further for Silvia to challenge relating to the unconstitutionality of Florida’s previous death scheme through postconviction proceedings and he was not required to perform a frivolous act. Moreover, nothing requires capital defendants to pursue post-conviction proceedings. Despite this, the majority denies, the Hurst relief that is clearly warranted. Such a decision effectively encourages postconviction counsel to raise meritless claims, even if they have been decided on direct appeal, simply to satisfy an arbitrary procedural step in the hope of future retroactivity. Crucially, nothing in this Court’s post-Hurst jurisprudence suggests any requirement for defendants to have pursued post-conviction appeals to receive the benefit of Hurst. This Court has noted, however, that defendants who waived their Sixth Amendment right to a jury are precluded from benefitting from Hurst. E.g„ Mullens, 197 So.3d at 38-40. Because the defendant in Mullens waived the rights to which Hurst applied, we correctly concluded that the defendant waived his entitlement to Hurst relief. Mullens, 197 So.3d at 38-40. The majority relies on Mullens as “an analogous case” and its only support for this decision. Majority op. at 350-51. It never explains why Mullens is analogous, and perhaps that is because Mullens is inappo-site. Mullens totally waived his rights to a penalty phase jury determination to which Hurst applied. Whereas, here, Silvia simply did not proceed with postconviction proceedings, which is wholly separate from the Sixth and Eighth Amendment rights implicated by Hurst. In effect, the majority attempts to compare a lightning bug to the lightning. A little over one year ago, in Hurst, this Court waxed poetic about the right- to a jury trial as a quintessential right in both Florida and the United States. Hurst, 202 So.3d at 53-59. We called this right our “birthright and inheritance.” Id. at 54 (quoting Duncan v. Louisiana, 391 U.S. 145, 154, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968)). Yet, now the Court equates waiver of this “birthright” to not proceeding with po'stconviction proceedings—which originally were a judicial creation to efficiently address the “postconviction crisis” caused in Florida by Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). See Baker v. State, 878 So.2d 1236, 1238-44 (Fla. 2004) (surveying the history of postconviction relief in Florida). Silvia did not waive his right to a jury and that jury returned a nonunani-rrious death recommendation. Quite simply, to deny him relief is to deny him his right to a jury trial under the Sixth Amendment and article I, section 22 of the Florida Constitution, along with his right to be free from an arbitrary death penalty under the Eighth Amendment and article I, section 17 of the Florida Constitution. Relatedly, the majority does not make clear whether it treats Silvia’s waiver of postconviction proceedings as a waiver of his right to habeas corpus. Of course, ha-beas corpus constitutes a substantial portion of postconviction proceedings; thus it would appear that this decision may effectively preclude Silvia and other similarly situated defendants from filing writs of habeas corpus. If this understanding is correct, then the decision borders dangerously on a suspension of these writs to a class of individuals, the right to which is protected under article I, section 9 of the United States Constitution and article I, section 13 of the Florida Constitution. In my view, our case law on not proceeding with postconviction proceedings does not supersede the express language of our Florida Constitution: “The writ of habeas corpus shall be grantable by right, freely and without cost.” Art. I, § 13, Fla. Const. Finally, this decision is ripe for reversal. As demonstrated above, there are a number of constitutional claims that Silvia can raise from this decision. Furthermore, unlike Asay which, despite -its faults, relied heavily on Florida’s adequate and independent retroactivity standard under Witt, Asay, 210 So.3d at 15-22, this decision does not rely on any standard: The reasoning here amounts to "this is the answer because I say it is.” Considering the fundamental constitutional rights at issue, such reasoning is an insufficient basis to deny Hurst relief. Based on the foregoing, I would apply Hurst to Silvia’s case, vacate his death sentence, and remand for resentencing in accordance with the Constitution, our precedent, and fundamental fairness. . Durocher v. Singletary, 623 So.2d 482, 485 (Fla. 1993) (establishing that a defendant is entitled to waive postconviction proceedings so long as there is an inquiry conforming to Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), into the "knowing, intelligent, and voluntary” nature of the waiver). . This subdivision prescribes a one-year time limit on filing an initial postconviction motion after the sentence becomes filial. See Fla. R. Crim. P. 3.851(d)(1). . Today, capital postconviction motions are covered by Florida Rule of Criminal Procedure 3.851, which was adopted in 1993. See Fla. R. Crim. P. 3.851 cmt. (1993).