# Supreme Court of Florida

_____

No. SC17-878
_____

**MILO A. ROSE,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

[July 19, 2018]

PER CURIAM.

Discharged counsel appeals the postconviction court's order granting Milo A. Rose's pro se motion to dismiss postconviction proceedings and discharge collateral counsel. We have jurisdiction. *See* art. V, § 3(b)(1), Fla. Const. For the reasons below, we affirm.

## BACKGROUND

In 1985, this Court affirmed Rose's conviction for first-degree murder and his death sentence. *Rose v. State* (*Rose I*), 472 So. 2d 1155, 1156 (Fla. 1985). In so doing, we explained the facts as follows:

> At approximately 10 p.m. on October 18, 1982, several witnesses were talking together outside one of their residences.

Testimony at trial revealed that they saw two men walking down the street. Subsequently they heard the sound of breaking glass and saw that one of the men . . . was lying on the ground. The other man, identified by witnesses as Milo Rose . . . was standing over him. Evidence shows that [Rose] then walked to a nearby vacant lot, picked up a concrete block, and returned to the man on the ground. [Rose] raised the block over his head and hurled it down on [the victim's] head. He picked up the block and hurled it down a total of five or six times. The area where the incident occurred was well lighted, so the witnesses were able to see the man with the concrete block clearly.

[Rose] was living with . . . the victim's mother [] at the time. Two other acquaintances were staying with them. On the night of the incident, these two acquaintances left an apartment which was in the vicinity where the killing occurred and found [Rose] hitchhiking on a nearby street. [Rose] got into their truck and stated several times that he had just killed [the victim]. [Rose] was later found in [the victim's mother's] house and was arrested [and charged with first-degree murder].

. . . [Rose] was tried by a jury which found him guilty as charged.

*Id.* at 1156-57.[1]

---

1. Rose's penalty phase jury recommended a sentence of death, *Rose I*, 472 So. 2d at 1157, by a vote of nine to three, *Rose v. State (Rose III)*, 774 So. 2d 629, 631 (Fla. 2000). The trial court found three aggravating factors: "(1) the capital felony was committed while [Rose] was under sentence of imprisonment; (2) [Rose] was previously convicted of felonies involving the use or threat of violence; and (3) the murder was committed in a cold, calculated, and premeditated manner." *Rose I*, 472 So. 2d at 1157. After weighing the "evidence of mitigating circumstances, including [Rose's] drinking, his history of alcohol abuse, his anti-social personality disorder, and . . . testimony that he was a good person," the trial court found that "there were no statutory or nonstatutory mitigating circumstances sufficient to outweigh or offset the aggravating circumstances" and followed the jury's recommendation and sentenced Rose to death. *Id.* Rose's sentence of death became final in 1985 after "counsel filed a certiorari petition with the United States Supreme Court, but at Rose's request, . . . withdrew the petition before it was ruled

In 1993, this Court affirmed the denial of Rose's initial motion for postconviction relief. *Rose v. State* (*Rose II*), 617 So. 2d 291, 298 (Fla.), *cert. denied*, 510 U.S. 903 (1993).[2] In 2000, this Court affirmed the summary denial of Rose's first successive motion for postconviction relief. *Rose III*, 774 So. 2d at 637.

In 2003, discharged counsel, Bjorn E. Brunvand, was appointed to represent Rose. In 2005, Rose filed a motion to discharge Brunvand and represent himself in state court proceedings. After conducting a complete *Faretta*[3] inquiry and finding that Rose "is an intelligent man" who was "waiving his right to counsel knowingly, intelligently[,] and with his eyes wide open," the postconviction court granted Rose's motion.

Nearly a decade later, Florida Rule of Criminal Procedure 3.851 was amended to prohibit capital defendants like Rose from representing themselves in postconviction proceedings in state court. *See* Fla. R. Crim. P. 3.851(b)(6). Although counsel was not reappointed to represent Rose in state court, in 2017,

upon." *Rose v. McNeil*, 634 F.3d 1224, 1233 (11th Cir.), *cert. denied*, 565 U.S. 857 (2011).

2. That same year, Rose filed a federal petition for a writ of habeas corpus, which was held in abeyance "to await . . . the outcome of additional state court proceedings," but ultimately denied in 2010. *Rose*, 634 F.3d at 1240.

3. *Faretta v. California*, 422 U.S. 806 (1975).

Brunvand, who represents Rose in federal court, filed a second successive postconviction motion on Rose's behalf—against Rose's wishes—seeking relief under the United States Supreme Court's decision in *Hurst v. Florida*, 136 S. Ct. 616 (2016), and this Court's decision on remand in *Hurst v. State* (*Hurst*), 202 So. 3d 40 (Fla. 2016), *cert. denied*, 137 S. Ct. 2161 (2017).

At the hearing on this motion, Rose informed the postconviction court that he wanted to dismiss postconviction proceedings and discharge Brunvand, who had not otherwise represented Rose in state court since being discharged in 2005. It was in this unusual procedural posture that the postconviction court conducted the inquiry required by *Durocher v. Singletary*, 623 So. 2d 482 (Fla. 1993), and rule 3.851(i) to "determine if [Rose] understands the consequences of waiving collateral counsel and proceedings," *Durocher*, 623 So. 2d at 485.

In its order granting Rose's motion, the postconviction court well explained its colloquy with Rose:

> The Court warned [Rose] that if he chose to dismiss the motion [seeking *Hurst* relief] and discharge counsel his postconviction proceedings would end and counsel would not file additional motions on his behalf. [Rose] stated several times that he maintains his innocence and does not want to pursue any legal claims that do not lead to an evidentiary hearing on his actual innocence. [Rose] repeatedly expressed his belief that his sentence is invalid and he is entitled to immediate release from custody, but insisted that he does not want appointed counsel to represent him and does not want to pursue the motion counsel filed. The Court warned [Rose] that Rule 3.851 does not allow postconviction defendants to proceed pro se and explained that if he abandoned the motion, his substantive claims will

not be ruled upon or reviewed by an appellate court. The Court pointed out that [Rose's] waiver of the motion is antithetical to his ultimate goal of reversing his sentence, but [Rose] maintained that he does not want to pursue the motion filed by defense counsel and wants defense counsel discharged from his case.

Finding that Rose "knowingly, intelligently, and voluntarily waived his right to pursue postconviction relief and his right to appointed collateral counsel," the postconviction court granted Rose's motion to dismiss postconviction proceedings and discharge collateral counsel. This is discharged counsel's appeal of the postconviction court's order, as required by rule 3.851(i)(8)(B).

## ANALYSIS

In *Durocher*, this Court held that competent capital defendants may waive the right to postconviction counsel and proceedings but held that a *Faretta*-type inquiry is necessary to ensure that the waiver is knowing, intelligent, and voluntary. 623 So. 2d at 483-85. The procedures for waiving postconviction counsel and proceedings that this Court established in *Durocher* have since been codified in rule 3.851(i), which provides in pertinent part:

(5) If the defendant is found to be incompetent for purposes of this rule, the court shall deny the motion without prejudice.
(6) If the defendant is found to be competent for purposes of this rule, the court shall conduct a complete (*Durocher/Faretta*) inquiry to determine whether the defendant knowingly, freely and voluntarily wants to dismiss pending postconviction proceedings and discharge collateral counsel.
(7) If the court determines that the defendant has made the decision to dismiss pending postconviction proceedings and discharge collateral counsel knowingly, freely, and voluntarily, the court shall

- 5 -

enter an order dismissing all pending postconviction proceedings and discharging collateral counsel.

Fla. R. Crim. P. 3.851(i). "Under rule 3.851(i), if the trial judge grants the motion, discharged counsel must seek review in this Court." *Trease v. State*, 41 So. 3d 119, 124 (Fla. 2010); *see also* Fla. R. Crim. P. 3.851(i)(8)(B). This Court reviews a postconviction court's ruling regarding a defendant's competency to waive and its finding that the waiver was knowing, intelligent, and voluntary for an abuse of discretion. *Trease*, 41 So. 3d at 124.

In this case, discharged counsel has not challenged Rose's competency. Because "[a] presumption of competence attaches from a determination of competency to stand trial," *Durocher*, 623 So. 2d at 484, absent grounds to believe that Rose was not competent, the postconviction court was not required to revisit the issue of Rose's competency. *See* Fla. R. Crim. P. 3.851(i)(4) (requiring the trial judge to appoint experts to examine the defendant and to hold a hearing on the defendant's competency only if "the judge concludes that there are reasonable grounds to believe the defendant is not mentally competent for purposes of this [rule 3.851(i)]"). Although Rose's competency is not in dispute, discharged counsel argues that the postconviction court did not follow the procedure required by *Durocher* and rule 3.851(i) and abused its discretion in finding that Rose's waiver was knowing, intelligent, and voluntary. We disagree.

- 6 -

The record establishes that before granting Rose's motion to discharge Brunvand in 2005, the postconviction court conducted a complete *Faretta* inquiry. When the postconviction court revisited counsel's discharge in 2017—in light of the subsequent prohibition against capital defendants' representing themselves in state court postconviction proceedings—it inquired as to whether Rose understood the consequences of waiving postconviction counsel and proceedings. As the postconviction court explained in the order on appeal, during the colloquy, Rose expressed his beliefs that the federal courts will eventually recognize that *Hurst v. Florida* overturned his conviction and sentence and that future death warrant litigation in his case will allow him to revisit the issue of his guilt. Critically, however, the postconviction court explained, and Rose acknowledged, that he is betting his life on beliefs that are contrary to the law and that his postconviction waiver would abandon the *Hurst* claim that discharged counsel filed on his behalf.[4]

---

4. The following exemplifies the postconviction court's exchanges with Rose:

> THE COURT: [I]f you stopped your postconviction proceedings and dismissed your collateral counsel, if tomorrow morning the governor signed a death warrant, there would be nothing standing between you and the death chamber. Do you understand that? Is that clear enough for you?
> THE DEFENDANT: I understand that.
> THE COURT: Okay.
> THE DEFENDANT: And they can do that. I don't believe that's true.
> . . . .

Our precedent is clear that "we cannot deny [Rose] his right to control his destiny," *Durocher*, 623 So. 2d 484, by overturning the waiver of postconviction proceedings and counsel that Rose clearly desired, so long as the waiver was knowing, intelligent, and voluntary. On this record, we find no abuse of discretion in the postconviction court's finding that it was after conducting the inquiry required by *Durocher* and rule 3.851. *Cf. Robertson v. State*, No. SC16-1297, 2016 WL 7043020, at *2-3 (Fla. Dec. 1, 2016) (affirming postconviction court's order dismissing postconviction proceedings and discharging collateral counsel where the record established the defendant understood that his waiver meant that "his right to pursue postconviction proceedings would be forever lost," that "he would become warrant-eligible," that his waiver "was permanent and that he could not change his mind in the future," and that "by waiving postconviction

---

THE COURT: How do you think if you stop postconviction proceedings and you dismiss collateral counsel that there will be— that it would happen that you would not be executed?

THE DEFENDANT: I've told you before. I'm of the same opinion of Justice Pariente, that my sentence has already been reversed or overturned, you know, that the United States Supreme Court has already overturned my sentence by ruling it unconstitutional [in *Hurst v. Florida*].

THE COURT: Do you understand that Justice Pariente has not come to the prison to unlock your cell door and escort you out to the parking lot?

THE DEFENDANT: Well, I mean—

THE COURT: And that's not going to happen.

THE DEFENDANT: I'm of the same opinion. If she's wrong[,] I'm gonna be wrong too.

proceedings, he was losing permanently his right to take advantage of any changes that may occur in the law").

**CONCLUSION**

The postconviction court followed the procedures outlined in *Durocher* and rule 3.851(i) and did not abuse its discretion in finding that Rose's waiver was knowing, intelligent, and voluntary. Therefore, we affirm the postconviction court's order granting Rose's motion to dismiss postconviction proceedings and discharge collateral counsel.[5]

It is so ordered.

CANADY, C.J., and LEWIS, LABARGA, and LAWSON, JJ., concur.
PARIENTE, J., dissents with an opinion, in which POLSTON, J., concurs.
QUINCE, J., recused.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

---

5. We note that Rose filed a responsive brief pursuant to rule 3.851 (i)(8)(B). Rose does not contest the validity of the *Durocher* hearing. However, he asks this Court to "send[] this case back to the trial court" to address discharged counsel's alleged ineffectiveness in failing to raise certain claims pertaining to his alleged actual innocence and further seeks relief against discharged counsel for "filing fraudulent motions" and "ignoring [his] instructions not to file anything in his name other than issues pertaining to actual innocence." To the extent Rose is requesting that we reopen the postconviction proceedings he validly waived, we deny his request. *See Trease*, 41 So. 3d at 126.

- 9 -

PARIENTE, J., dissenting.

I dissent because I conclude that the postconviction court erred in finding that Rose's postconviction waiver was knowing, intelligent, and voluntary. While I recognize that this Court reviews a postconviction court's order finding a knowing, intelligent, and voluntary waiver of postconviction under the deferential abuse of discretion standard, this Court cannot abdicate its duty in ensuring that the waiver is in fact unequivocal. *See Trease v. State*, 41 So. 3d 119, 124 (Fla. 2010). Because the transcript in this case makes clear that Rose did not fully understand the consequences of waiving postconviction, specifically as to any future change in law including the retroactivity of *Hurst*,[6] Rose's waiver was not unequivocal. Accordingly, I would reverse the postconviction court's order and reinstate discharged counsel.

Rose was sentenced to death following a jury's nonunanimous recommendation for death by a vote of nine to three. *Rose v. State* (*Rose I*), 472 So. 2d 1155, 1156 (Fla. 1985); majority op. at 2 note 1. His conviction and sentence were final before the *Hurst* retroactivity cutoff date set by this Court. *See generally Hitchcock v. State*, 226 So. 3d 216 (Fla.), *cert. denied*, 138 S. Ct. 513 (2017); *Asay v. State* (*Asay V*), 210 So. 3d 1 (Fla. 2016), *cert. denied*, 138 S. Ct. 41

_____

6. *Hurst v. State* (*Hurst*), 202 So. 3d 40 (Fla. 2016), *cert. denied*, 137 S. Ct. 2161 (2017); *see Hurst v. Florida*, 136 S. Ct. 616 (2016).

- 10 -

(2017) (setting the United States Supreme Court's decision in *Ring v. Arizona*, 536 U.S. 584 (2002), as the proper cutoff).

This Court recently held, over Justice Lewis's dissent, that a valid waiver of postconviction proceedings and counsel precludes the defendant from taking advantage of any future change in the law, including *Hurst* relief. *See generally State v. Silvia*, 235 So. 3d 349 (Fla. 2018). At the hearing on Rose's waiver in this case, Rose acknowledged that this Court's current case law did not entitle him to resentencing pursuant to *Hurst*. However, Rose made clear that he wished to retain the right to raise a *Hurst*-related claim in the future if there were favorable changes in the law from either this Court or the United States Supreme Court. Despite Rose's clear desire to preserve and raise future claims, the postconviction court found Rose's postconviction waiver knowing, intelligent, and voluntary.

Although Rose sought to dismiss the motion filed by his discharged counsel, the record as a whole shows that Rose neither fully understood that he was waiving nor agreed to waive any right to bring claims based on future favorable changes in the law. The following exchange between Rose and the postconviction court illustrates Rose's confusion regarding the implications of waiving his right to postconviction proceedings and counsel:

> THE COURT: But that is not what I'm trying to explain to you, Mr. Rose, and *I'm beginning to think that you don't quite understand the nature of the situation you're in.* As it stands right now here today, if . . . you stopped your postconviction proceedings and dismissed

your collateral counsel, if tomorrow morning the governor signed a death warrant, there would be nothing standing between you and the death chamber. Do you understand that? Is that clear enough for you?

THE DEFENDANT: I understand that.

. . . .

THE COURT: Okay. But, Mr. Rose, do you understand that if you end postconviction proceedings and dismiss collateral counsel, as it is right now, the way the law is, that is gonna to be your situation? Is that something—

THE DEFENDANT: Okay. . . . I'm doing it.

THE COURT: Okay. And you accept that?

THE DEFENDANT: *I'm ending postconviction proceedings right now.*

THE COURT: Okay. But the request is to stop them because—

THE DEFENDANT: I've stopped them.

THE COURT: Okay. But do you understand that and you're . . . accepting that . . . this is the end of it for you. Is that what you're trying to tell me?

THE DEFENDANT: *I'm accepting that's the end of it for you, not for me, for you.* . . . No longer gonna have a voice in this.

THE COURT: How do you think if you stop postconviction proceedings and you dismiss collateral counsel that . . . you would not be executed?

THE DEFENDANT: I've told you before. I'm of the same opinion of Justice Pariente, that my sentence has already been reversed or overturned, you know, that the United States Supreme Court has already overturned my sentence by ruling it unconstitutional.

THE COURT: Do you understand that Justice Pariente has not come to the prison to unlock your cell door and escort you out to the parking lot? . . . And that's not going to happen.

THE DEFENDANT: I'm of the same opinion. If she's wrong . . . , I'm gonna be wrong too. Okay?

(Emphasis added.) In addition to this excerpt, Rose reiterated several times at the

hearing on his waiver his belief that his death sentence is unconstitutional under

*Hurst* despite this Court's retroactivity holdings. Specifically, Rose stated that he would stay apprised of the law and may have a claim in the future, stating:

> THE COURT: So you just want to wait to see if the U.S. Supreme Court—
> THE DEFENDANT: Right.
> THE COURT: clarifies the law in your favor?
> THE DEFENDANT: Yes, sir. Thank you. Yes, sir. Thank you.

On this record, which makes clear that Rose did not properly understand that "his waiver of postconviction proceedings was permanent and that he could not change his mind in the future," I am unable to conclude that Rose's waiver was knowing, intelligent, and voluntary. *Robertson v. State*, 2016 WL 7043020, *2 (Fla. Dec. 1, 2016). Therefore, I would hold that the postconviction court abused its discretion in finding that Rose's waiver was valid.

Accordingly, I dissent.

POLSTON, J., concurs.

An Appeal from the Circuit Court in and for Pinellas County,
   William H. Burgess III, Judge - Case No. 521982CF008683XXXXNO

Bjorn E. Brunvand and J. Jervis Wise of Brunvand Wise, P.A., Clearwater, Florida,

   for Appellant

Pamela Jo Bondi, Attorney General, Tallahassee, Florida, and Lisa Martin, Assistant Attorney General, Tampa, Florida,

   for Appellee