PARIENTE, J., dissenting.
I dissent because I conclude that the postconviction court erred in finding that Rose's postconviction waiver was knowing, intelligent, and voluntary. While I recognize that this Court reviews a postconviction court's order finding a knowing, intelligent, and voluntary waiver of postconviction under the deferential abuse of discretion standard, this Court cannot abdicate its duty in ensuring that the waiver is in fact unequivocal. See Trease v. State , 41 So.3d 119, 124 (Fla. 2010). Because the transcript in this case makes clear that Rose did not fully understand the consequences of waiving postconviction, specifically as to any future change in law including the retroactivity of Hurst ,[6] Rose's waiver was not unequivocal. Accordingly, I would reverse the postconviction court's order and reinstate discharged counsel.
Rose was sentenced to death following a jury's nonunanimous recommendation for death by a vote of nine to three. Rose v. State (Rose I ), 472 So.2d 1155, 1156 (Fla. 1985) ; majority op. at 548-49 note 1. His conviction and sentence were final before the Hurst retroactivity cutoff date set by this Court. See generally Hitchcock v. State , 226 So.3d 216 (Fla.), cert. denied , --- U.S. ----, 138 S.Ct. 513, 199 L.Ed.2d 396 (2017) ; Asay v. State (Asay V ), 210 So.3d 1 (Fla. 2016), cert. denied , --- U.S. ----, 138 S.Ct. 41, 198 L.Ed.2d 769 (2017) (setting the United States Supreme Court's decision in Ring v. Arizona , 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), as the proper cutoff).
This Court recently held, over Justice Lewis's dissent, that a valid waiver of postconviction proceedings and counsel precludes the defendant from taking advantage of any future change in the law, including Hurst relief. See generally State v. Silvia , 235 So.3d 349 (Fla. 2018). At the hearing on Rose's waiver in this case, Rose acknowledged that this Court's current case law did not entitle him to resentencing pursuant to Hurst . However, Rose made clear that he wished to retain the right to raise a Hurst -related claim in the future if there were favorable changes in the law from either this Court or the United States Supreme Court. Despite Rose's clear desire to preserve and raise future claims, the postconviction court found Rose's postconviction waiver knowing, intelligent, and voluntary.
Although Rose sought to dismiss the motion filed by his discharged counsel, the *553 record as a whole shows that Rose neither fully understood that he was waiving nor agreed to waive any right to bring claims based on future favorable changes in the law. The following exchange between Rose and the postconviction court illustrates Rose's confusion regarding the implications of waiving his right to postconviction proceedings and counsel:
THE COURT: But that is not what I'm trying to explain to you, Mr. Rose, and I'm beginning to think that you don't quite understand the nature of the situation you're in. As it stands right now here today, if ... you stopped your postconviction proceedings and dismissed your collateral counsel, if tomorrow morning the governor signed a death warrant, there would be nothing standing between you and the death chamber. Do you understand that? Is that clear enough for you?
THE DEFENDANT: I understand that.
....
THE COURT: Okay. But, Mr. Rose, do you understand that if you end postconviction proceedings and dismiss collateral counsel, as it is right now, the way the law is, that is gonna to be your situation? Is that something-
THE DEFENDANT: Okay.... I'm doing it.
THE COURT: Okay. And you accept that?
THE DEFENDANT: I'm ending postconviction proceedings right now.
THE COURT: Okay. But the request is to stop them because-
THE DEFENDANT: I've stopped them.
THE COURT: Okay. But do you understand that and you're ... accepting that ... this is the end of it for you. Is that what you're trying to tell me?
THE DEFENDANT: I'm accepting that's the end of it for you, not for me, for you .... No longer gonna have a voice in this.
THE COURT: How do you think if you stop postconviction proceedings and you dismiss collateral counsel that ... you would not be executed?
THE DEFENDANT: I've told you before. I'm of the same opinion of Justice Pariente, that my sentence has already been reversed or overturned, you know, that the United States Supreme Court has already overturned my sentence by ruling it unconstitutional.
THE COURT: Do you understand that Justice Pariente has not come to the prison to unlock your cell door and escort you out to the parking lot? ... And that's not going to happen.
THE DEFENDANT: I'm of the same opinion. If she's wrong ..., I'm gonna be wrong too. Okay?
(Emphasis added.) In addition to this excerpt, Rose reiterated several times at the hearing on his waiver his belief that his death sentence is unconstitutional under Hurst despite this Court's retroactivity holdings. Specifically, Rose stated that he would stay apprised of the law and may have a claim in the future, stating:
THE COURT: So you just want to wait to see if the U.S. Supreme Court-
THE DEFENDANT: Right.
THE COURT: clarifies the law in your favor? THE DEFENDANT: Yes, sir. Thank you. Yes, sir. Thank you.
On this record, which makes clear that Rose did not properly understand that "his waiver of postconviction proceedings was permanent and that he could not change his mind in the future," I am unable to conclude that Rose's waiver was knowing, intelligent, and voluntary.
*554 Robertson v. State , 2016 WL 7043020, *2 (Fla. Dec. 1, 2016). Therefore, I would hold that the postconviction court abused its discretion in finding that Rose's waiver was valid.
Accordingly, I dissent.
POLSTON, J., concurs.

Hurst v. State (Hurst ), 202 So.3d 40 (Fla. 2016), cert. denied , --- U.S. ----, 137 S.Ct. 2161, 198 L.Ed.2d 246 (2017) ; see Hurst v. Florida , --- U.S. ----, 136 S.Ct. 616, 193 L.Ed.2d 504 (2016).